RICHARD HAMOR and another *vs.* BAR HARBOR WATER CO.

Hancock.      Opinion February 2, 1886.

*Eminent domain. Waters. Legal taking. Evidence. Damages. Remedy.*

Private property may be taken by the sovereign power of the government in the exercise of the right of eminent domain for purposes of public utility.

Interests in water, as well as in land, may be taken by virtue of this power, and both are equally the subjects of compensation.

It is a well established rule, that where damage is necessarily done to the property of an individual by being taken by authority of the legislature for public use, such damage can be recovered only in the manner authorized by statute.

To constitute a legal taking however, by which those acts which cause the damage can be justified, and thereby remit the party to such exclusive statutory remedy, it must be shown that the requirements of law have been strictly complied with.

In all cases where private property is taken in the exercise of the right of eminent domain, whether it be in lands, or the usufructuary interest in flowing water, the taking must be evidenced by some writing describing the estate so taken by definite and specific boundaries, quantity or measure, according to the nature of the property taken.

On report.

An action of the case for diverting one-half the water running in Duck brook in Eden from the plaintiffs' mill situated near the mouth of that brook.

At the trial the only question submitted to the jury was the assessment of damages, and they returned a verdict for $347.70. The case was then reported to the law court with so much of the evidence introduced by the defendant as tended to justify the diversion.

The following is the notice and plan referred to in the opinion. The notice was published in a public newspaper, published in the county, as required by the act of the legislature cited in the opinion.

" Bar Harbor Water Company — Notice is hereby given to all concerned that the Bar Harbor Water Company have located on the following lands, as see plans filed with the town clerk of Eden : A dam on the outlet of Eagle Lake. A dam on the Duck Brook stream, at the lower end of the Meadows, so-called. A route for an aqueduct, commencing at the dam on the Duck Brook stream at the town end of the Meadows, and running through lands of S. E. Lyon, A. P. Cunningham, E. Salisbury or others, Mr. Low or others, Lewis Day or others, Amos Richardson, T. Roberts or others, estate of R. Y. Higgins, J. Salisbury, Lynde or others. Also a reservoir on the land of Lynde or others.          [Signed]    Bar Harbor Water Company. Bar Harbor, April 14, 1874."

*Jasper Hutchins*, for the plaintiffs.

*Wiswell and King*, for the defendant.

The status of the defendant corporation in very many respects has been established in the recent case of *Riche* v. *Bar Harbor Water Co.* 75 Maine, 91.

That was an action of trespass for entering the plaintiff's premises and building a reservoir, the justification in defense was

the same as in the case at bar and the court held that the action could not be maintained.

The plan of the location was made and filed and the notice published in compliance with the act of the legislature — and the

plan and notice met the requirements of the act. The remedy provided by the act, for parties whose property or rights in property have been taken, must be followed. It takes the place of the common law remedy. *Stowell* v. *Flagg*, 11 Mass. 364; *Stevens* v. *Propr's Middlesex Canal*, 12 Mass. 468; *Heard* v. *Same*, 5 Met. 81; *Sudbury Meadows* v. *Middlesex Canal*, 33 Pick. 36; *Spring* v. *Russell*, 7 Maine, 273; *Riley* v. *Lowell*, 117 Mass. 76; *Ipswich Mills* v. *Co. Com.* 108 Mass. 363; *Wamesit Power Co.* v. *Allen*, 120 Mass. 352; *Perkins* v. *Lawrence*, 136 Mass. 305; *Hull* v. *Westfield*, 133 Mass. 433; *Bailey* v. *Woburn*, 126 Mass. 416.

Of course the rule is otherwise if the taking has not complied with the requirements of the act of incorporation. By the act the company was authorized to take the water from Eagle Lake and Duck Pond. By the plan filed and notice published and by the actual construction of the dam and sluice notice was given to all interested. No more particular notice was required or could well be given.

If it be contended that there was no way to determine the amount of water that was to be taken it is respectfully submitted it is very clear that one of two rules must be adopted. Either the company would be liable to the damage that would result from the taking of all the water that could be diverted by the full size and capacity of the works, and in case of an increase of capacity be liable to a further assessment, or else according to the rule fully established by the later Massachusetts decisions cited above, that the plaintiff would be entitled to recover compensation for both future and prospective damages as well as immediate, having in view the amount of water that so far as could be judged would ever be needed.

FOSTER, J. The defendant corporation by special act of the legislature approved February 10, 1874, c. 449, was authorized to take, detain and use the water of Eagle Lake, and Duck Brook, or either of them, for the purpose of conveying to, and supplying the village and vicinity of Bar Harbor with pure water; and to erect and maintain dams and reservoirs, and lay and

maintain pipes and acqueducts necessary for the proper accumulating, conducting, discharging, distributing and disposing of water, and forming proper reservoirs thereof.   By this act the corporation is held liable to pay all damages that may be sustained by any persons by the taking of any land, or other property, or by flowage, or by excavating through any land for the purpose of laying down pipes and acqueducts, building dams and reservoirs, and also damages for any other injuries resulting from said. acts.

It is also provided that in case damage is sustained and the amount to be paid cannot be mutually agreed upon, then the party suffering such damage may cause the same to be ascertained in the same manner and under the same conditions, restrictions and limitations as are provided in the case of damages by the laying out of highways.

By section 6 "said corporation shall cause surveys to be made for the purpose of locating their dams, reservoirs and pipes and other fixtures, and cause accurate plans of such location to be filed in the office of the town clerk of said Eden, and notice of such location shall be given to all persons affected thereby by publication in some public newspaper in said county ; and no entry shall be made upon any lands, except to make surveys, until the expiration of ten days from the said filing and publication."

The plaintiffs were the occupants of a saw mill upon Duck Brook, and this action on the case is brought by them to recover damages for the diversion of the water from said stream from March first, 1876, to March first, 1882.   The defendants admit that during the time named they have diverted the water by taking it above the plaintiffs' mill so that the water thus diverted has not been allowed to flow down the stream to it ;  but they claim that such diversion has been in accordance with the provisions of an act of the legislature authorizing them thus to divert the water, and that by that act a method is provided by which all persons injured can recover damages as therein specially set forth, and that therefore the plaintiffs cannot maintain this action.

A special verdict of the jury has settled the amount of damages

which the plaintiffs are entitled to recover provided this action is maintainable.

There can be no question but that the act granting the right to the defendants to take, detain and use the water from the sources and for the purposes therein specified, is constitutional. The decisions are numerous that private property may be taken by the sovereign power of the government in the exercise of the right of eminent domain for purposes of public utility. That this may be done when the object is to supply a village or community with pure water, and though the agency by which it is done may be a private corporation thereby deriving profit and advantage to itself, is not denied. In such case the interests of the public, from considerations affecting the health and comfort of densely populated communities, require that private property may be thus appropriated for uses which are deemed public. It is thus that the right of property of private individuals, whether it be lands, or the usufructuary interest in flowing water, is made to subserve the public exigencies, and for which, under the constitution, "just compensation" is guaranteed and must be made. " It is true the injury in the one case is to the land, and in the other to the water; but this can make no difference in the result. Interests in water, as well as in land, may be taken under this act; and both are equally the subjects of compensation." *Denslow* v. *New Haven and Northampton Co.* 16 Conn. 103; *St. Helena Water Co.* v. *Forbes*, 62 Cal. 182; S. C. 45 Am. Rep. 659.

Neither can water be diverted from a private stream under authority granted by the legislature in the exercise of the right of eminent domain for the purpose of supplying a town or village with pure water without making compensation to the riparian proprietors whose rights are thereby injuriously affected. *Bailey* v. *Woburn*, 126 Mass. 416; *Lund* v. *New Bedford*, 121 Mass. 286; *Wamesit Power Co.* v. *Allen*, 120 Mass. 354. Nor can individual property be taken, or individual rights impaired, for the benefit of the public without such compensation. *Canal Commissioners* v. *People*, 5 Wend. 456.

While not denying the plaintiffs' right to just compensation for any damage they may have sustained to their property, the

defendants deny their right of recovery therefor in this action, claiming that their only remedy is that specified in the private statute hereinbefore named.

Undoubtedly this would be true if the acts of the defendants constituted a legal taking of the water from Duck Brook. The case would then fall within the well established rule, that where damage is necessarily done to the property of an individual by being taken by the authority of the legislature for public use, such damage can be recovered only in the manner authorized by statute. *Perry* v. *Worcester*, 6 Gray, 546 ; *Hull* v. *Westfield*, 133 Mass. 434 ; *Spring* v. *Russell*, 7 Maine, 273. To constitute a legal taking, however, by which the defendants can successfully justify their acts, they must show that the requirements of law have been complied with. The party whose property has been appropriated is entitled to demand a strict compliance with all the statutory provisions for his benefit. Being in derogation of the common law right which every citizen has of possessing and enjoying his property, it is to be construed strictly. Contrary to the general rule in case of grants from one person to another, that the words are to be taken most strongly against the grantor, in grants of this nature authorized by the legislature, the words are to be taken most strongly against the grantee.

Therefore, if the defendants have failed of bringing themselves within the requirements of law, then their justification fails, and they are liable for such damage as they may have done to the plaintiffs, as wrong doers, and this action may properly be sustained. *Wamesit Power Co.* v. *Allen, supra.*

The statute authorized the taking, detaining and using of water in which the plaintiffs had valuable rights. That the defendants have taken the water is admitted. Yet it nowhere appears that the taking has ever been evidenced by any writing of any kind whereby the measure of such taking has been, or can ever be, made known to the plaintiffs or any one else. There has been a taking of the plaintiffs' property, resulting in damages to them, but there has been no preliminary act evidenced by any writing specifying and defining what or how much has been taken, or is.

to be taken, which is necessary for the just protection and proper security of the owner of property taken.

In the case of *Lancaster* v. *Kennebec Log Driving Co.* 62 Maine, 272, the statute there referred to authorized the taking and using of shores, flats, etc. but contained no express requirement that the property taken should be evidenced by any writing whatever, and the court say : " The taking of real estate is by attachment, or levy, or by virtue of some statutory proceedings. In all cases, the taking is to be evidenced by some writing describing the real estate so taken by definite and specific boundaries. . . . . . The statute contemplates a taking within definite bounds. The owner of the land cannot otherwise know whether the action of the defendants is within or without the land, etc., taken, if there are no ascertained or ascertainable limits. Neither can the committee proceed to assess damages upon an indefinite and undetermined tract. It is not for them to ascertain the shores, flats, etc., which are taken by resorting to the uncertainties of conflicting testimony. There must be written evidence of the territory the defendants may elect to take and use." See also *P. S. and P. R. R. Co.* v. *Co. Com.* 65 Maine, 293.

There is no reason why the same requirements should not apply equally to the taking of water from a stream in which the plaintiffs have valuable riparian rights, as to the taking of land. Both are equally the subjects of property and of compensation. *Ex parte Jennings*, 6 Cow.. 526. By the statutes of this state the word land includes all tenements and hereditaments connected therewith, and all interests therein. The riparian proprietor may insist that his right to the use of water flowing in a natural stream shall be regarded and protected as property. *Nuttall* v. *Bracewell*, L. R. 2 Exch. 9. Such right is not a mere easement or appurtenance but is inseparably annexed to the soil itself. *Dickinson* v. *Grand Junction Canal Co.* 7 Exch. 299 ; *Cary* v. *Daniels*, 8 Met. 480. And the damage for the taking of such right may be greater or less according to the quantity of water diverted as the damage may be greater or less when measured by the quantity of land taken. If it be necessay, therefore, that the taking of land thus appropriated to public use be evidenced by

some writing defining it by definite and specific boundaries, for the same reason should there be like evidence of the measure or quantity of water thus taken. Without this, no proper estimate of damages could be made. Without this, no proper protection would be afforded to the parties without resorting to the " uncertainties of conflicting testimony."

The necessity as well as the propriety of this principle will be readily perceived when applied to the case at bar. Here the the defendants are authorized to take only so much water as may be required for the purposes named in the act. This includes not only what may be necessary for the present wants of the inhabitants, but for their future or prospective wants. But one compensation is contemplated by the provisions of the act, like that afforded in the case of the laying out of highways. Such compensation would include not only the immediate damages caused by the taking, but future and prospective damages as well. *Bailey* v. *Woborn*, 126 Mass. 420 ; *Ipswich Mills* v. *Co. Com.* 108 Mass. 365.

The whole of the water in the stream has not been taken or diverted. It may well be understood that only so much has been appropriated as the present wants of the inhabitants require. Whether this quantity is to be the measure, or whether it may be doubled, or an appropriation of all the water in the stream may yet be made, there is no writing of any kind to determine. Nor does the plan, or notice of April 14, 1874, in the least afford any evidence upon this question. The notice and plan in this case are entirely different from those referred to in the case of *Riche* v. *Bar Harbor Water Co.* 75 Maine, 94, 97. By § 6 of the act the defendants were required to cause surveys to be made for the purpose of locating their dams, reservoirs, pipes and other fixtures, and cause accurate plans of such location to be filed in the office of the town clerk, and notice of such location to be given to all persons affected thereby. If the plaintiffs were to be considered as embraced among those affected by the location of the defendants' dams, reservoirs, pipes or other fixtures, neither the plan nor the notice, in this case, could be considered as sufficiently accurate to determine the rights of the defendants in the

water of a stream wherein the plaintiffs had important and valuable interests, nor to measure the quantity of water to be taken.

Furthermore, the evidence shows that in 1880, six years after the defendants began to divert the water from the stream, changes were made in the flume, the length between where the water was taken and the receiving reservoir being shortened nearly one-half, and the main pipe, extending from the reservoir to the village, enlarged from four inches to one of ten inches in diameter.

Not only, therefore, is the evidence, so far as the plaintiffs' rights are concerned, too uncertain, but the use of the grant too fluctuating, to afford a legal justification to the defendants; and the conclusion of the court is that this action may be maintained.

*Judgment on the verdict.*

PETERS, C. J., DANFORTH, VIRGIN and HASKELL, JJ., concurred.