## In Equity.

ANNA C. PEIRCE *vs.* CITY OF BANGOR.

Penobscot.    Opinion May 28, 1909.

*Eminent Domain. Just Compensation. Interested and Disinterested Tribunals. Appeal. Death of Appellant Pending Hearing. Statutory Construction. Constitution of Maine, Article I, section 21. Revised Statutes, chapter 4, sections 89, 90, 91 ; chapter 23, sections 8, 20 ; chapter 84, section 50.*

1.   Payment of just compensation is a condition precedent to an appropriation of land for public uses.

2.   The legislature has in the first instance the right to prescribe the method of fixing the compensation for land taken for public uses, but the State Constitution requires that the compensation be just, i. e., fixed by a disinterested tribunal.

3.   Compensation fixed by an interested tribunal is not just, unless agreed to.

4.   The municipal officers of a city are not, where their city is interested, a disinterested tribunal.

5.   Compensation fixed by municipal officers if not appealed from by the land owner, is just compensation.

6.   Compensation fixed by municipal officers if appealed from by the land owner, is not just compensation.

7.   In case of an appeal just compensation cannot be ascertained until the appeal is heard and determined.

8.  If because of the death of the appellant, the land owner's appeal cannot be heard, then condition precedent has not been complied with and the land cannot be appropriated.

9.  The Constitution of Maine, Article I, section 21, provides that " private property shall not be taken for public uses without just compensation." This provision for "just compensation" assumes the existence of a tribunal to determine the "just compensation."

10.  When a statute may be interpreted in two ways, one of which works manifest inequitable results, and the other just and reasonable results, the latter must prevail.

11.  The city of Bangor instituted proceedings for the taking of certain land for a public library. lot. The municipal officers awarded the owner of the land $45,000 as damages for the taking and the owner appealed. While the appeal proceedings were pending the land owner died. *Held:* That the whole proceeding for taking the land abated and became void ab initio.

In equity.    On appeal by plaintiff.    Sustained.

Bill in equity brought by the plaintiff to enjoin the defendant city from occupying for a public library lot the land described in the bill.    The defendant city, without answering, filed a general demurrer to the bill.    The Justice hearing the matter sustained the demurrer and dismissed the bill.    The plaintiff then appealed as provided by Revised Statutes, chapter 79, section 22.

NOTE.    In connection with the case at bar, see *Hayford* v. *Bangor*, 102 Maine, 340, and 103 Maine, 434.

The case is fully stated in the opinion.

*E. C. Ryder*, and *Hugo Clark*, for plaintiff.

*Donald F. Snow*, City Solicitor, *Charles A. Bailey*, and *Louis C. Stearns*, for defendant.

SITTING :    WHITEHOUSE, SPEAR, CORNISH, KING, BIRD, JJ.—
EMERY, C. J., PEABODY, J., Dissenting.

SPEAR, J.    William B. Hayford late of Bangor died testate seized and possessed of certain real estate situated at the corner of Franklin and Hammond streets in Bangor.    This property was given by him to his wife in trust during her life.    At her decease the trust was to terminate and the trust property to vest in Anna C. Peirce, if living, otherwise in her issue.    Mrs. Hayford qualified as trustee and became seized and possessed of the premises in question.

While so seized and possessed the city council of the city of Bangor, acting under the provisions of sections 89, 90 and 91 of chapter 4 of the Revised Statutes upon a petition in writing signed by 36 tax payers, properly describing the land and the owners as far as known, directed the municipal officers to take the premises for a lot for a public library building if they found the land suitable for that purpose. The municipal officers acting under the instructions given proceeded to take the premises for a lot for a public library building, awarding to Mrs. Hayford in her capacity as trustee for damages for such taking, the sum of $45,000. From the award of the municipal officers Mrs. Hayford in her capacity as trustee appealed to the Supreme Judicial Court, praying that a just estimate of the damages be had and determined as provided by law. This appeal was entered at the October term of court in 1906. While the appeal proceedings were pending Mrs. Hayford died testate and Anna C. Peirce was appointed administratrix with the will annexed. At the October term 1907, Mrs. Peirce offered to go into court and prosecute the appeal, both as administratrix and as beneficiary under the will of William B. Hayford, whereupon the city filed a motion asking that her name be stricken from the docket upon the ground that she had no right to appear for the reason that the appeal proceedings abated upon the death of Mrs. Hayford. The Law Court held that the death of Laura Hayford abated her complaint and that neither her legal representative nor her successor in title should prosecute it. *Hayford* v. *Bangor*, 103 Maine, 434.

The regularity of the proceedings and their validity in the first instance are not questioned. In fact they have been adjudged good. *Hayford* v. *Bangor*, 102 Maine, 340. Upon the death of Mrs. Hayford, Anna C. Peirce, the plaintiff, succeeded to the legal title in the premises in question if the condemnation proceedings proved ineffective. She refused the tender of the $45,000 awarded by the municipal officers. Nothing further was done until the city attempted to tear down the buildings on the premises. Thereupon a bill in equity was filed by the plaintiff as owner of the land asking for a preliminary and permanent injunction restraining the city from interfering with the property alleging that by the death of

Mrs. Hayford not only her complaint for damages to be determined by the court abated but the whole proceedings for the taking of the land abated and became void ab initio. The preliminary injunction was granted upon the filing of the statutory bond. The city before making an answer to the bill filed a general demurrer. Upon hearing a decree was filed sustaining the demurrer and dismissing the bill. From that decree the plaintiff appealed and upon this issue the case comes before us.

We shall spend no time in determining that Mrs. Hayford's complaint should be regarded as an appeal from the assessment of damages by the municipal officers, R. S., ch. 4, sec. 91, and ch. 23, sections 8 and 20, construed in pari materia clearly establish this proposition. Section 8 provides that any person aggrieved by the estimate of damages . . . . "may appeal therefrom."

Therefore the issue in this case is not what was the effect of Mrs. Hayford's appeal, for it is conceded that the appeal alone merely suspended the judgment below ;—but what was the effect of her death upon her appeal? Did it abate the whole proceeding or did it revive the judgment below? It is admitted that our statute is silent upon this point nor has our court passed upon it. The sitting Justice who dismissed the bill said: "The status of an award of damages by municipal officers for town ways, pending such a complaint, has never been precisely determined by the court, so far as I can discover. Whether the original assessment is absolutely vacated by the complaint, as judgments in common law actions are vacated by an appeal from an inferior to a superior court, or as decrees of the probate court are vacated by an appeal to the Supreme Court of Probate, or as decrees in equity are vacated by an appeal to the Law Court, or whether the operation and effect of the assessment is merely suspended, pending a review or revision of the same on complaint, has never been adjudicated."

Therefore it would seem that this court is now perfectly free to determine whether the appeal in the case at bar abated the proceedings or left them merely in abeyance so that they revived and became effective as a judgment by the death of the appellant. This is purely a matter of statutory construction and should be

decided in accordance with the well settled rules. "The object of construing a statute is to ascertain the intent of the legislature. This should be done by an examination of the phraseology of the statute itself, and by ascertaining the circumstances and conditions surrounding, and the subject matter, object and purpose of the enactment of the statute." *Church* v. *Knowles*, 101 Maine, 264.

It has also been held that the effect of a statute upon the subject matter of the enactment is of vital importance in ascertaining the intent of the legislature. After speaking of the burden of double taxation imposed by an explicit statute, *East Livermore* v. *Banking Co.*, 103 Maine, 418, the court say: "This section, however, should not be read by itself. It is only a part of the statute upon taxation. It should be read in connection with the other statutes prior and contemporaneous, and also in the light of contemporaneous and subsequent practical construction by the taxing officers and business public." In other words, that the effect of the statute upon business interests as understood by the "business public" must be taken into consideration in determining the rights of parties to be affected by the construction given.

This is not cited because it is a new rule of construction, but because it is specific in its application. Now, the rule established in this case is, that, when a statute may be interpreted in two ways, one of which works manifest inequitable results, and the other just and reasonable results, the latter must prevail. In other words, that unless the statute demands it, it cannot be presumed that the legislature intended to enact a law calculated to work manifest wrong and injustice. We find no such statute.

On the contrary nothing can be made plainer, that the legislature intended to give the land owner an appeal and trial by jury, than the fact that it expressly provided for them. Therefore the intent to be sought in this case is, not whether the legislature intended to give a trial by jury but whether their intent, in this regard, is to be defeated by an accident, a failure to provide for a contingency undoubtedly not thought of. For to declare that the legislature provided for an appeal, and then deliberately omitted a provision for survival in case of death, would be a base aspersion of its

418 . PEIRCE v. BANGOR. [105

integrity. Because, then, they forgot to so provide should their intention be, not upheld, but defeated? Not unless judicial construction requires it. In the light of these rules let us construe Mrs. Hayford's rights in filing an appeal.

The constitution provides that "Private property shall not be taken for public uses without just compensation." Section 89, ch. 4, R. S., authorizes the municipality to take land for a library and sections 90 and 91 prescribes the method of making "just compensation." As a part of this method, sections 8 and 20, R. S., ch. 23, the owner has a right to appeal to the Supreme Judicial Court and have "just compensation" determined by a jury. It is admitted that Mrs. Hayford completed and entered her appeal and that it was pending when she died. This court held that her appeal did not survive, no statute providing therefor. The defendants admit by their demurrer to the plaintiff's bill that the property, which these municipal officers valued at $45,000 is worth $125,000. Her appeal was defeated by vis major: Neither the original land owner nor the present appellant was in any respect at fault. The damages for the land taken have never been determined in accordance with the mode prescribed by the statute. If the defendants' contention prevails a gross injustice may result. Under these circumstances what was the object, purpose and intention of the legislature in giving the right of appeal? That the appellant should be finally heard if she so desired, by a disinterested tribunal,— or that she should be obliged, without fault on her part, to submit to the judgment of an interested board of municipal officers? When the constitution of Maine was adopted not one of the men, comprising this municipal board, could have been permitted to sit on this case as a juror, nor would he now. R. S., ch. 84, sec. 50, forbids a Justice of the S. J. C. to sit in the trial or disposal of an action in which his county or town is a party or interested, except upon waiver of the adverse party. In *Conant's Appeal*, 102 Maine, 477, it is said: "It is a maxim of the law that a person ought not to be judge in his own cause, because he cannot act both as judge and party, and it applies in all cases where judicial functions are to be exercised whether in proceedings of inferior tribunals or in

courts of last resort. *Dimes* v. *Proprietors of Grand Junction Canal, 3 House of Lords Cases,* 759, 793 ; *Queen* v. *Justices of Hertfordshire,* 6 Q. B. 753 ; *State* v. *Castleberry,* 23 Ala. 85 ; *Meyer* v. *City of San Diego,* 121 Cal. 102 ; *Tootle* v. *Berkley,* 60 Kan. 446 ; *Pearce* v. *Atwood,* 13 Mass. 324 ; *Cooley's Constitutional Limitations,* 592, 595. This rule has been established since the earliest periods of the common law. *Bonham's Case,* 8 Coke, 118. The reason for it expressed by Bronson, J., in *The People* v. *The Suffolk Common Pleas,* 18 Wend. 550, shows its universal application. "Next to the importance of rendering a righteous judgment, is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge."

An act of the legislature cannot change the influences that may act upon a man's mind. His self interest is the same whether he is acting under authority of a statute or upon his own volition the other elements being equal. Therefore, it follows that the municipal officers were not, in fact, disinterested. But it may be asked why the legislature authorized a board to be constituted of interested parties? It never would have done so without coupling with the procedure the right of appeal. The appointment of the municipal officers under our New England form of government, where the town is the unit, to act in the first instance with respect to certain matters affecting the municipality, was a most convenient method, and their action would naturally lead to a final determination of most matters submitted. But, to the party who felt aggrieved at the decision of this interested tribunal, the right of appeal, it seems to us, was emphatically intended, not only for the purpose of "securing a righteous judgment" but of doing so in such a manner as "will beget no suspicion of the fairness and integrity of the judge." — In this case the municipal officers were financially interested in the result of the litigation and absolutely ineligible at common law. But it is clear that if the defendant's contention is sustained, the right of appeal, the safety valve of this mode of procedure, would utterly fail of its purpose.

On the other hand, what harm can result to the defendant in this or any other similar case by sustaining the plaintiff's contention

that the whole proceeding abate? The land, barring the possibility of destruction by a convulsion of nature, will remain. The city will retain all its municipal powers. It can at any moment begin new proceedings of condemnation. It can suffer no hardship except the inconvenience of some delay, and a trifling matter of expense, infinitesimal in its distribution among the tax payers.

At this juncture, we admit the court has the power, if constitutional, to interpret the statute in question in favor of the contention, either of the plaintiff or defendant. But under the rules of construction found in the recent cases cited, it has the duty of construing it in harmony with just and equitable results. We find ourselves in a position that not only enables, but commands, us to give the latter interpretation. We find no statute or decision of our court that forbids it. A contrary construction would put the legislature in the position of permitting, if not contemplating, the perpetration of a wrong.

By this construction both parties to the proceeding receive their constitutional and statutory rights. The city, by a new taking, may acquire the land; it is entitled to this and nothing more. The owner, by a new trial, can get "just compensation;" she is entitled to this and nothing less. Submission to this rule hurts nobody.

It is suggested, however, that it is startling to think that, by parity of reasoning, town ways or even highways would all be abated and made void by the death of any land owner pending his appeal, but, to the mind of the court, it would appear more startling to contemplate the taking of a person's land, in invitum, without a fair trial. If the legislature has failed to provide for the survival of the appeal why should not they be abated? These highway proceedings have abated in this State as the books will show scores of times upon the most trivial technicality. Why not for a substantial reason? Besides, the infrequency of the present contingency, it never having happened before so far as we know, makes it too remote to be invoked for the purpose of defeating the plain requirements of justice.

What would this court say in regard to the constitutionality of a statute that made a board of railroad directors a tribunal of final award upon the question of land damages taken by their company? It is as much a right of way as a highway or town way, and the same legal and constitutional question is involved. The transaction, if permitted by statute, would not only startle but dismay. Yet this is the logic of the defendant's position.

But now, as bearing upon the intent of the legislature in giving an appeal, and omitting to provide for the contingency of death, let us consider the effect of the defendant's contention upon the rights of the parties. This position is so closely stated in the decree dismissing the bill, that we adopt it. "The plaintiff alleges in her bill that the property for which the municipal officers awarded $45,000 is worth $125,000, and therefore that she is being deprived of her property without just compensation. And she contends that since the allegation must be held to be admitted by the demurrer, she is entitled in any event to maintain her bill upon this allegation. It does not seem so to me. If the land was legally taken, and if the damages were legally assessed by a legally competent tribunal, before which the owner had a right and opportunity after notice, to appear and be heard, and if that assessment now stands as the final award, the plaintiff is concluded by it, and the fact, assuming it to be so, that the municipal officers erred in their judgment as to the value is not material in this bill for an injunction. The complainant cannot be heard again on that question by any tribunal."

We are not quite able to agree with this conclusion. The appellant who had been brought into court, in invitum, and who had conformed to every provision of law should not by the act of God be subjected in her estate to even probable injury. Had she once been heard or had an opportunity to be heard, she should be concluded. But this is not the case. She has never been heard. By inevitable accident she is construed out of court, where her appeal was legally pending. We are aware that the value of the land is admitted only as a matter of pleading, and is entirely open upon a new procedure; yet the logic of the case must assume it to be as

stated. It is admitted by the defendant and we have before us no other evidence. We hardly think this contention should be permitted to prevail and supersede a construction that does justice to all and injustice to none.

This construction of the statute giving a right of appeal is supported by analogous cases in other jurisdictions. *Johnson* v. *Baltimore and N. Y. Ry. Co.*, N. J. Eq. 17 Atl. 574, is a case involving the effect of an appeal under a statute precisely like ours with respect to the right of a trial by jury in the appellate court. The issue was whether the taker had a right to the possession of the land, pending the owner's appeal. The question turned upon the effect of the appeal. It may be said that this case does not apply, as in the case at bar, no appeal is pending. But this is not a fair criticism. In the New Jersey case the appeal had not been prosecuted at all. It had simply transferred the case to the appellate court, nothing more. The reasoning of the opinion applies only to the effect of taking and completing the appeal. In this respect it is exactly like the case at bar. Mrs. Hayford had taken and completed her appeal and it was pending in full force and effect, when she died.

The Chancellor in construing the New Jersey statute and the effect of the appeal under it said : "This, as it seems to me, is the obvious meaning of this clause, and this construction conforms to what, in my judgment, must be regarded as sound principle. Where the legislature provides, as part of the method of ascertaining what is just compensation, that the land owner may appeal from the award of the commissioners, and have a trial by jury, it would seem to be entirely clear that it cannot be said, after an appeal has been taken, that what is just compensation in that particular case has been ascertained in the manner appointed by law ; for in such a case a right to a trial by jury constitutes a very material part of the method appointed by law for the ascertainment of what is just compensation, and until what is just compensation has been ascertained in the manner authorized by law; and the condemnation money paid, either actually or constructively, it is not within the power of the legislature to dispossess the land owner and put another person in possession of his land. To the same effect is *Maskall* v.

*Maskall*, 3 Sneed, Tenn. 208, see also *Loring* v. *Hitchcock*, 2 Ohio, 274.

It could not have been the intention of the legislature that the appeal should abate by death and leave the rest of the procedure valid.

There is another construction which we believe supports the plaintiff's contention. It will be observed that the clause of the constitution involved does not authorize the taking of private property. It was not intended to. It says it "shall not be taken . . . without just compensation; that is, if a municipality does take private property it must pay for it. To secure "just compensation" is the sole object and purpose of the constitutional provision. So solicitous were the founders of the State, upon this matter, that they declined to leave the question of "just compensation" to the action of the legislature, but made it a requirement of the fundamental law. *Comins* v. *Bradbury*, 10 Maine, 447. In view of the great care manifested upon this subject, what tribunal did the framers of this clause have in mind, as competent and qualified to determine this question of "just compensation?" For, the provision for just compensation assumes the existence of a tribunal to determine it. The constitution does not expressly define the tribunal. It has left the determination of this question to implication and judicial construction. The only question, therefore, is what sort of tribunal did the people, adopting the constitution, intend? To determine this we may refer to the competency of contemporary tribunals and methods of procedure.

The implication is that they expected just compensation to be finally determined by a tribunal whose qualifications for competency should substantially correspond with the requirements of their time. Upon this point Cooley in his Constitutional Limitations says: "But when there has been a practical construction which has been acquiesced in for a considerable period, considerations of adhering to this construction, sometimes present themselves with a plausibility and force which it is not easy to resist." In the light of this rule can it be held that the municipal officers of the city of Bangor, tax payers and financially interested, even by express statute, could be made a court of last resort upon this important question?

The statute authorizing the proceedings before us allows "any city or town containing more than one thousand inhabitants upon petition in writing," etc., to take private property.   These officers are constituted a court, in the first instance, to determine what is just compensation for such taking.   The authority of the legislature to prescribe this method is not questioned.   But, barring the palpable incapacity of the selectmen of small towns, was this a tribunal, at the time our constitution was adopted, that had final jurisdiction over questions of this nature?   For the most obvious reason and by established law it was not.   At that time, the law required that a judge, juror or any other tribunal, charged with the duty of deciding property rights, should be absolutely disinterested.   Even a trial justice in the most trivial case could not sit upon a question, in which his town was to receive the slightest financial benefit.   The decision of our own court upon this point has already been referred to in *Conant's Appeal*, supra; and so particular is our court upon this question, today, that, where one of the selectmen who signed the return upon the petition for a way, also signed the petition for laying out the way, although an appeal from the action of the selectmen was taken to the Supreme Judicial Court and a disinterested committee appointed, who reported to the court, yet the court held that the whole case should abate because of the interest of the selectman who signed the petition and the return.   See *Conant's Appeal*, supra.

*Pearce* v. *Atwood*, 13 Mass. 324, decided in 1816, is a case in which a justice of the peace, who received the complaint and issued the warrant, was an inhabitant of the town to whose use a moiety of the penalty to be recovered was to be applied.   It was held that "he was interested in the prosecution and, therefore, could not sit as a judge."

In giving expression to their decision the court used this emphatic language:   "It is very certain that, by the principle of natural justice, of the common law, and of our constitution, no man can lawfully sit as judge in a cause in which he may have a pecuniary interest.   Nor does it make any difference that the interest appears to be trifling; for the minds of men are so differently affected by the

same degrees of interest that it has been found impossible to draw a satisfactory line. *Any* interest, therefore, *however small*, has been held sufficient to render a judge incompetent. The only exception known, to this broad and general rule, exists where there may be a necessity that the person so interested should act, in order to prevent a failure in the administration of justice."

The court also quotes the language of Lord Mansfield in *Hesketh* v. *Braddock*, a prosecution for a penalty which was only five pounds, in which he said: "There is no principle in the law more settled than this, that any degree, even the smallest degree, or interest in the question depending, is a decisive objection to a witness, and much more so to a juror, or to the officer by whom the juror is returned; and the minuteness of the interest will not relax the objection; for the degrees of influence cannot be measured; no line can be drawn, but that of a total exclusion of all degrees whatever."

This language is held to apply to a judge or magistrate as well as a juror and to bring him within this general exclusion on account of interest.

This was the law of Massachusetts when our constitution was adopted. A disinterested tribunal was the one required by the law at that time. And the common law of Massachusetts, not the common law of England, is the law of the land which controls the interpretation of our constitution. *State* v. *Knight*, 43 Maine, at page 123. Now, while it is not contended that the land owner was, as a matter of right, entitled to a jury trial, it is confidently insisted that the constitution contemplated that he was entitled to be finally heard, if he desired, by a disinterested tribunal. The query, therefore, presented upon this phase of the case is, if the legislature by positive statute had undertaken to subject the land owner's rights to the final decision of a tribunal, interested in fact, without appeal, would it be such a tribunal as was contemplated by the constitution? If not, then the defendant must fail, for it could not be permitted to do indirectly, by mistake or omission, what it could not do directly.

There is still another ground upon which we think the defendant must fail.

A full compliance with the method of giving just compensation prescribed by statute, must be regarded as a condition precedent to the right of a municipality to assert legal ownership. It should be noticed upon this phase of the case, that it is not incumbent upon the private owner to begin any kind of a proceeding to obtain just compensation. It is the bounden duty of the taker to make it before he can acquire title. Although the owner, if dissatisfied, must take an appeal yet the burden is still upon the taker to make just compensation. The appellant need do nothing but appeal to impose this duty. The question of taking is not at all involved. The statutory procedure of taking being legally accomplished then the constitutional duty of making compensation begins. The appeal brings up the question of compensation and nothing else. But the taking, although in all other respects regular, is not completed until just compensation is awarded. R. S., ch. 23, sec. 8. It is incumbent upon the taker to observe all requirements of law in order to complete the taking and make it legal. *Leavitt* v. *Eastman,* 77 Maine, 117 ; *Conant's Appeal,* 102 Maine, 477. He must therefore prosecute the appeal to judgment.

Unforeseen pitfalls and dangers are obstacles which the movers must encounter and overcome, and not the owners. The appellant has nothing to do but wait for a tender of "just compensation" awarded in compliance with law. She need put in no evidence, either before the original or appellate tribunal. She may suffer thereby, but she can remain passive if she likes. But it is still incumbent upon the taker to proceed to the end, and procure a judgment of just compensation. In other words such judgment is clearly intended as a condition precedent to the right of the city to obtain legal title to the land of Mrs. Hayford. It was the duty of the city to comply with the law and not Mrs. Hayford's duty to make them. The burden of procuring a judgment of just compensation rested upon the city from the beginning to the end. This interpretation of duty will probably not be disputed by the defendant.

But how does it undertake to discharge this duty? By simply saying that an unforeseen accident having happened on account of

which it is unable to continue its present process, it will abandon the only question pending in court and one which by express statute it was bound to determine, and return to the very judgment from which the appeal was taken, leaving the land owner's appeal unheard, as entitled by the law prescribing the method of procedure when the taking was begun.

Besides the force of reason and fair dealing against such a procedure we believe *Comins* v. *Bradley*, 10 Maine, 447, fully sustains the contention that compliance with the provisions of the law prescribing the manner of determining just compensation, is a condition precedent. This was a case in which the legislature authorized the taking of land for a State road without providing for compensation. It was argued that the State being the taker, the defendant might go to the legislature and have just compensation determined there. But the court, after commenting upon the scrupulous regard with which this constitutional right had been treated, proceeded to say : "It is insisted that the present action ought not to be sustained ; inasmuch as the plaintiff might have full justice done him upon petition to the legislature. But this could not have been the mode, by which to obtain the indemnity, contemplated by the constitution. It is too precarious and uncertain a character. Compensation must be made or provided for, when the property is taken. It is upon that condition, alone, that such taking is authorized."

It is manifest from this opinion that in taking private property for a public use, just compensation is the principal, and the taking, the incidental thing to be considered. Transpose the phraseology of the constitution and its meaning becomes more readily apparent. It would then read "without just compensation private property shall not be taken." The determination of compensation is the part of the procedure of taking which the legislature cannot leave even to itself, as we have already seen in the case last cited.

Therefore a legal taking in the end is dependent upon a legal award of just compensation and cannot, in a perfected appeal, be separated from the appeal. With the fall of the appeal by abatement through death, the whole case must go. The city, therefore,

being unable to prosecute Mrs. Hayford's appeal to a judgment of just compensation the whole proceeding abated and became void ab initio.

It is well settled that cases of this class come within the equity jurisdiction of the court. *Richie* v. *Bar Harbor Water Co.*, 75 Maine, 91.

*Appeal sustained.*
*Decree reversed.*
*Temporary injunction made permanent.*
*New decree in accordance with this opinion.*