**OXFORD COUNTY AGRICULTURAL SOCIETY**

v.

**SCHOOL ADMINISTRATIVE DISTRICT NO. 17.**

Supreme Judicial Court of Maine.

June 3, 1966.

Bernstein, Shur, Sawyer & Nelson, by Barnett I. Shur, C. Daniel Ward, Portland, for plaintiff.

Verrill, Dana, Walker, Philbrick & Whitehouse, by Roger A. Putnam, Portland, Robert T. Smith, South Paris, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, RUDMAN and DUFRESNE, JJ.

RUDMAN, Justice.

On report. The plaintiff, Oxford County Agricultural Society, here referred to as "Society", is a Maine corporation organized under Special Act of the Legislature. The defendant, School Administrative District No. 17, here referred to as "District", is a quasi-municipal corporation organized under the laws of Maine and charged with the responsibility of operating public schools within its geographic limits.

The Society owned the Oxford County Fair Grounds located in part in Paris and

in part in Norway, both of which municipalities are located within the geographical boundaries of the District.

On February 28, 1964, the Directors of the District, pursuant to the authority conferred upon them by 20 M.R.S.A. § 3562, as it then existed, laid out a school house lot comprising approximately 24.5 acres of the Society's Fair Grounds and assessed damages.

The authority of the District and the propriety of the taking was challenged by the Society in the Oxford County Superior Court, and from a finding in favor of the District an appeal was taken by the Society to the Law Court and the issues were resolved in favor of the District. Oxford County Agricultural Society v. School Administrative District No. 17, 161 Me. 334, 214 A.2d 893.

The Society, pending the proceedings to determine the validity of the condemnation, pursuant to 20 M.R.S.A. § 3563, as it then existed, seasonably appealed the adequacy of the award of damages to the County Commissioners for the County of Oxford. At the time of the appeal the pertinent provisions of 20 M.R.S.A. § 3563, were as follows:

"If the owner is aggrieved at the location of the lot or the damages awarded by the municipal officers, he may apply to the county commissioners within 6 months from the determination of such location and award of damages. * * *"

The above Section 3563 further provided:

"Upon final determination of the location of said lot the clerk of the administrative unit, clerk of the county commissioners or clerk of Superior Court, whichever one has custody of the records of the final hearing tribunal, shall cause a description of the lot and a plan thereof to be recorded in the registry of deeds for the county or registry district where the same is located."

Pending the appeal before the Law Court, the Society's appeal before the County Commissioners was held in abeyance.

While the case was on appeal to determine the validity of the condemnation, the Legislature repealed the statutory provisions governing condemnation for school lots and appeals therefrom, (20 M.R.S.A. § 3562 and § 3563), and simultaneously substituted new sections governing "Condemnation by Municipality" (20 M.R.S.A. § 3562), "Condemnations by School Administrative Districts" (20 M.R.S.A. § 3562-A), and "Appeals" (20 M.R.S.A. § 3563).

The purpose and intent of the Legislature in repealing Sections 3562 and 3563 are clearly expressed in the preamble to the Act, Public Laws, 1965, Chap. 241, stating:

"Whereas, the procedures outlined in the Revised Statutes, Title 20, Section 3562, *are unclear;*

"Whereas, many administrative units are currently facing the problem of acquiring land to construct school buildings; and

"Whereas, the acquisition of proper school sites is essential to the welfare of the citizens of these communities; and

"Whereas, several communities are unable to acquire adequate school sites because of the confusion in the present statutes; and

"Whereas in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine, and require the following legislation as immediately necessary for the preservation of the public peace, health and safety; now, therefore,

"Be it enacted by the People of the State of Maine, as follows:

"Sec. 1, R.S., T. 20, § 3562, *repealed and replaced.* Section 3562 of Title 20 of

the Revised Statutes is *repealed* and the following enacted *in place thereof:*

\* \* \* \* \* \*

"Sec. 2, R.S., T. 20, § 3563, *repealed and replaced.* Section 3563 of Title 20 of the Revised Statutes is *repealed* and the following enacted *in place thereof."* (Emphasis supplied.)

Webster's New Twentieth Century Dictionary, Second Edition, defines "Replace":

"To put again in or restore to a former place, position, rank, office, etc.

"to fill the place of with a substitute or equivalent; to provide an equivalent for;

"to take the place of; to supplant; to be a substitute for; to succeed to; to supersede; to displace."

The pertinent changes in 20 M.R.S.A. § 3562–A, are the requirement, that if "the owner of the property thereof refuses to sell, or, the parties are unable to agree on a price within 60 days of the first offer, \* \* \* the board of directors may take and acquire a lot \* \* \*. The directors shall \* \* \* *within 30 days after payment, tender or deposit of such damages, cause a description of such lot as laid out by them and a plan thereof to be recorded in the registry of deeds where the land lies, and notify the recorded owner by serving, in the usual manner as provided for in the commencement in civil actions as provided by law, upon him a certified copy of the vote of the municipal officers* which provides for such taking." (Emphasis supplied.)

The pertinent changes in 20 M.R.S.A. § 3563, *were the elimination of* the county commissioners as the intermediate appellate tribunal *and making the Superior Court the appellate tribunal by filing a complaint in said court and serving the school administrative unit with a copy thereof within 90 days from the date of recording of the description of the lot and plan as required in* § 3562–A. (Emphasis supplied.)

The District contends that any further right of appeal by the Society from the determination of damage by the Directors of the District was terminated by the repeal of 20 M.R.S.A. § 3562 and § 3563, and the sole liability of the District is to pay the damages as assessed by the District.

It would be contrary to reason to permit such a contention to prevail.

■ Whatever the Legislature in fact intended, it must be presumed that it intended to do that only which the Constitution authorized it to do, for no legislature could have entertained an *intent* to deprive an owner of his constitutional right to just compensation under due process of law. U.S.Constitution, Amend. XIV, § 1; Maine Constitution, Art. I, § 6–A and § 21.

"From this course of legislation it is manifest that the Legislature intended to repeal the old section as amended, and substitute therefor the present section as it appears in the statute. By this repeal, if no new legislation had been enacted, no procedure whatever, for the benefit of the estate could have been instituted, as, without statutory authority such procedure could not be maintained. Therefore it is apparent that, by enacting section 16 as it now stands, the Legislature did not intend to take away all remedy that had existed under the section repealed, but to make the process prescribed in the new enactment retroactive." Hayes v. Briggs, 106 Me. 423, 426, 76 A. 905, 906.

"In other words, that, unless the statute demands it, it cannot be presumed that the Legislature intended to enact a law calculated to work manifest wrong and injustice." Peirce v. Bangor, 105 Me. 413, 417, 74 A. 1039, 1041.

Mr. Justice Emery in delivering the opinion in Conant's Appeal, 83 Me. 42, 45, 21 A. 172, said:

"The bill of rights declares that in all controversies concerning property the

parties shall have a right to a trial by jury, except in cases where it had theretofore been otherwise practiced. This right should be recognized in all such controversies between the citizen and the government. The spirit of legislation upon the subject has always been in harmony with this principle, and, whatever the omission of words in this statute, we should be slow to infer any intention to violate the principle."

In Conant's Appeal, 102 Me. 477, 481, 67 A. 564, 566, the court said:

"It is a maxim of the law that 'a person ought not to be judge in his own cause, because he cannot act both as judge and party', and it applies in all cases when judicial functions are to be exercised, whether proceedings of inferior tribunals or in courts of last resort."

■ The repeal of Sections 3562 and 3563 as they then existed became effective on April 30, 1965. The jurisdiction of the county commissioners over the appeal then pending terminated before decision was made by them. The result being that the damage for the land taken has never been determined in accordance with the prescribed statutory method.

"It is a well-established and familiar rule of law that, whenever the jurisdiction of a tribunal over any subject-matter depends wholly upon a statute, a new act repealing the statute, or so amending it as to transfer the jurisdiction to another tribunal, without any reservation as to proceedings then pending, will have the effect to invalidate all such proceedings, at whatever stage they may have arrived. If final decision has not been rendered, or final relief. granted, before the amendatory act went into effect, it cannot be after." Grand Trunk Railway of Canada v. County Commissioners, 88 Me. 225, 227, 33 A. 988, see Peirce v. Bangor, supra.

In Kennebec Water District v. City of Waterville, 96 Me. 234, 246, 52 A. 774, 779, the court said:

"Section 21, art. I, of the constitution of this state, provides that, 'private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it.' By this clause of the constitution no condition is placed upon the sovereign power of the state in the taking of private property for public uses under its inherent power of eminent domain, except that of giving just compensation for private property so taken. No tribunal or method is provided for determining what shall be a 'just compensation.' In the absence of any constitutional limitation to the contrary, the legislature may prescribe the terms, conditions, and methods by which the compensation to be paid on a taking of private property for public use should be ascertained. The proceedings are in the nature of an inquisition on the part of the state, and are necessarily under its control. The state must provide for an assessment of damages by an impartial tribunal, and it may be a jury or commission or appraisers, or court without a jury. Mills, Em.Dom., §§ 84, 85. As stated in Lewis Em.Dom., § 313, 'The legislature may provide such mode as it sees fit for ascertaining the compensation, provided that the tribunal is an impartial one, and that the parties have an opportunity to be heard.' The law as above stated is fully supported by an array of authorities cited by the learned authors above named, and may be regarded as elementary."

It would be absurd to say the Legislature intended by the repeal of Section 3563 as it then existed to deprive the Society of its constitutional right to have just compensation determined by an impartial tribunal and by the repeal it intended to make the assessment of damages by the District Directors final and binding upon the Society. When we consider that new Section 3563 was designed to take the place of old Sec-

tion 3563, we think it probable that the Legislature intended the procedure under the new act to be retrospective. The material change between the two sections merely eliminated the County Commissioners as "a board of appraisers which shall * * * ascertain and determine what the location of the lot shall be, changing said location if they deem it proper and determine the value of the property or land to be taken, make a correct return of their doings, signed by them, accompanied by an accurate plan of the land and state in their return the name of the person to whom damages are allowed, and the amount allowed." (Old Section 3563).

The foregoing quotation is omitted from new Section 3563, and by this elimination the decision of the District Directors as to the area of the lot, within the statutory limitation, and the location is not subject to review or change.

"The object of construing a statute is to ascertain the intent of the Legislature. This should be done by an examination of the phraseology of the statute itself, and by ascertaining the circumstances and conditions surrounding, and the subject-matter, object, and purpose of the enactment of, the statute." Church v. Knowles, 101 Me. 264, 266, 63 A. 1042, 1043; Peirce v. Bangor, supra.

In determining the legislative intent it is proper that the preamble and every section of the repealed act be read in connection with and in light of the sections of the new enactment. Statutes must be construed to carry out legislative intent. 50 Am.Jur., Statutes, § 533; 82 C.J.S. Statutes § 435, and cases cited.

"A statute must be construed as a whole, and the construction ought to be such as may best answer the intention of the legislature. Such intention is to be sought by an examination and consideration of all its parts, and not from any particular word or phrase that may be contained in it. This is the guiding star in the construction of any statute. Such a construction must prevail as will form a consistent and harmonious whole." Rackliff v. Inhabitants of Greenbush, 93 Me. 99, 104, 44 A. 375, 376.

In School Administrative District No. 17 v. Orre et al., 160 Me. 45, 49, 197 A.2d 319, 321, this court said:

"The language of a particular section of the statutes should now be construed in such a manner as to implement the manifest intention of the Legislature and conform to the new pattern."

In Wright v. Oakley, 46 Mass. (5 Metcalf) 400, 406, Chief Justice Shaw said:

"In construing the revised statutes and the connected acts of amendment and repeal, it is necessary to observe great caution, to avoid giving an effect to these acts, which was never contemplated by the legislature. In terms, the whole body of the statute law was repealed; but these repeals went into operation simultaneously with the revised statutes, which were substituted for them, and were intended to replace them, with such modifications as were intended to be made by that revision. There was no moment, in which the repealing act stood in force, without being replaced by the corresponding provisions of the revised statutes. In practical operation and effect, therefore, they are rather to be considered as a continuance and modification of old laws, than as an abrogation of those old, and the reenactment of new ones. In order to construe them correctly, we must take the whole of the revised statutes, together with the act of amendment and the repealing act, and consider them in reference to the known purposes which the legislature had in view in making the revision.

"The object, we think it manifest, was not to any considerable extent to change the law, but to remove doubts, to reconcile discrepancies and contradictory enactments, to give the sanction of positive

law to rules which before stood on the authority of usage, reasonable deduction and judicial decision, and to render all the enactments of the statute law more clear, concise and practical. But we think it was not intended to alter to any considerable extent the rules of law affecting the rights of parties; and wherever there was such a purpose manifested, it was intended that the new rules should operate prospectively, and not affect past transactions. Wherever the change in the law was most considerable —as the rules affecting real property—there was a provision postponing the operation of the new rules to a future day. It is, therefore, we think, more consonant with the manifest intent of the legislature, as well as more consistent with principles of justice, in construing any particular provision of the revised statutes, which varies, in any respect, from the corresponding provision of the old law for which it was substituted, to give it a prospective operation, and not to give such a construction, unless necessary, as to disturb existing relations, or unsettle existing rights, duties and liabilities."

In United Hebrew Benevolent Association v. Benshimol, 130 Mass. 325, 327, the court said:

"It is a familiar rule of construction, that when statutes are repealed by acts which substantially retain the provisions of the old law, the latter are held not to have been destroyed or interrupted in their binding force." See McAdam v. Federal Mutual Liability Ins. Co., 288 Mass. 537, 541, 193 N.E. 362.

"A remedy is nothing more than the means provided by law for the enforcement of rights, and is not of itself a right except, in so far as, when there exists but a single remedy for the enforcement of a vested right, such remedy cannot be wholly taken away, without providing some other reasonably convenient and efficient means of enforcement, without violating the Constitution, since a withdrawal of all legal means for the enforcement of a right is equivalent to a subversion of the right itself." Sansberry v. Hughes, 174 Ind. 638, 92 N.E. 783, 784; Pittsley v. David, 298 Mass. 552, 556, 11 N.E.2d 461; Tucker v. McLendon, 210 Ala. 562, 98 So. 797, 799.

■ The District having condemned the land under legislative authority, there is much reason that it should define with precision the location and quantity of land required in order to apprise the owner of the exact intent of the taking by metes and bounds. The statute authorizes the taking of "not exceeding 25 acres for any one project". However, this contemplates a taking within definite bounds. Our court in Lancaster v. Kennebec Log Driving Co., 62 Me. 272, 274, said:

"It is manifestly impossible to attempt their assessment without knowing to what property the injury has been done. * * The owner of the land cannot otherwise know whether the action of the defendants is within or without the land, * * * if there are no ascertained nor ascertainable limits. * * * There must be written evidence of the territory the defendants may elect to take and use."

See Hamor v. Bar Harbor Water Co., 78 Me. 127, 133, 134, 3 A. 40; Bryant v. City of Pittsfield, 199 Mass. 530, 533, 85 N.E. 739.

The present statute clarifies the ambiguities and removes the confusion which the Legislature found existed, and replaces the old for the new. Fairness and justice require that there be no uncertainty in the description of the property to be taken.

In Nichols on Eminent Domain, Third Edition, § 25.4, we find the following:

"The order of the taking must contain a description of the land included in the limits of the new public work so that it will identify a definite tract of land as certainly as is required in the case of a conveyance of land." See cases cited and § 26.112.

In so saying we do not imply that the taking by the District in conformity with the law as it existed on February 28, 1964 was incomplete or ineffective. The legal sufficiency of such taking was finally adjudicated in Oxford County Agricultural Society v. School Administrative District No. 17, supra. Under the peculiar circumstances of this case, however, justice and equity require that, in order to effectuate an orderly transition of both the forum and procedure of appeal on the issue of damages, both parties take certain additional procedural steps. The orders hereinafter made, and which are intended to be applicable only in this unique situation, will, we believe, provide an adequate method and time schedule for the determination of the appeal which the plaintiff has of right.

The points on appeal as stipulated by the parties are:

"1. Whether or not the County Commissioners for Oxford County have jurisdiction to hear the appeal from the award of damages to the Oxford County Agricultural Society by School Administrative District No. 17, dated February 28, 1964.

"2. Whether or not the Superior Court for Oxford County has jurisdiction to hear an appeal from the award of damages to the Oxford County Agricultural Society by School Administrative District No. 17, dated February 28, 1964.

"3. Whether or not the Directors of School Administrative District No. 17 are required to cause a description of the lot laid out by them on the Oxford County Agricultural Society's property and a plan thereof to be recorded in the Oxford County Registry of Deeds, and thereby afford the Oxford County Agricultural Society the right to file its appeal, as to damages, to the Superior Court for Oxford County within ninety (90) days from the date of said recording."

Judgment in this case shall be entered declaring:

I. The jurisdiction of the County Commissioners terminated on April 30, 1965. Chapter 241 of the Public Laws 1965.

II. The Directors of School Administrative District No. 17, shall within 30 days from the date of filing this opinion cause a description of the land taken and a plan thereof to be recorded in the registry of deeds where the land lies and give notice to the Oxford County Agricultural Society by serving in the usual manner as provided for in the commencement of civil actions, together with a certified copy of the vote of the District authorizing such taking as provided in 20 M.R.S.A. Section 3562–A.

III. The Superior Court for the County of Oxford has jurisdiction to hear an appeal from an award of damages made under Section 3562–A, and in the instant case the Oxford County Agricultural Society has the right to enter such appeal in said Superior Court within 90 days from the date of recording of the description of the lot in the registry of deeds as provided in 20 M.R.S.A. Section 3563.

So ordered.