IN THE MATTER OF: WALTER L. USERY, EMPLOYEE-CLAIMENT, AND BEAUNIT CORPORATION TRUCKING DIVISION AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA

No. 7627SC452

(Filed 15 December 1976)

1. Master and Servant § 109— unemployment caused by labor dispute — management lockout as labor dispute

As used in G.S. 96-14(5), the statute providing that an individual shall be disqualified for unemployment benefits during the time his unemployment is caused by a labor dispute in active progress, a "labor dispute" includes work stoppage caused by management lockouts.

2. Master and Servant § 109— management lockout — denial of unemployment benefits — determination as to fault not required

The Employment Security Commission is not required, prior to denying benefits to victims of a lockout, to determine whether the employees were out of work due to some involuntary conduct on their part.

APPEAL from *Falls, Judge.* Judgment entered 19 February 1976 in CLEVELAND County Superior Court. Heard in the Court of Appeals 13 October 1976.

This is an appeal from a judgment denying unemployment insurance benefits to Walter L. Usery (hereinafter called "claimant"). The claim arose from a work stoppage at the trucking division of Beaunit Corporation (hereinafter called "Beaunit") in Kings Mountain, North Carolina. Claimant, along with other employees of Beaunit, was represented for purposes of collective bargaining by Teamster Local Union No. 71 (hereinafter called the "Union").

Beaunit and the Union were bound by terms of a collective bargaining agreement which remained in effect until 31 August 1975. The agreement further provided that it would remain "in full force and effect from year to year [after 31 August 1975] . . . unless written notice of desire to cancel or terminate the agreement is served by either party upon the other at least sixty (60) days prior to the date of expiration." On 25 June 1975, the Union notified Beaunit that it wished to negotiate changes in the contract regarding working conditions, fringe benefits, wages and other provisions. Between 25 June 1975 and 31 August 1975, Beaunit and the Union negotiated in an effort to reach an accord, but the areas of disagreement were not eliminated. A new agreement was not reached prior to 31 August, and the parties agreed to extend the contract for seven additional days. An agreement was not reached during the extension period, and on 5 September, Beaunit began refusing assignments to the drivers. By 10 September 1975, the entire trucking division of Beaunit in Kings Mountain was shut down. Beaunit freely admits that it "locked out" its employees and will not recall them until a new agreement is reached.

On 10 September 1975, claimant filed for unemployment insurance benefits with the Employment Security Commission of North Carolina (hereinafter called "Commission"), alleging that Beaunit, his employer, was closing down its operations. Beaunit responded that claimant's employment ended because "operations [were] suspended due to a labor dispute." A hearing on the matter was held before a Special Appeals Deputy of the Commission, who held that claimant and other employees of Beaunit were disqualified from receiving benefits ". . . until it is shown to the satisfaction of the Commission that their

unemployment is no longer caused by a labor dispute in active progress . . ." Claimant appealed to the Full Commission, which affirmed the Deputy's decision. Claimant then appealed to the Cleveland County Superior Court which on 19 February 1976 entered an order affirming the decision of the Commission.

　　*Roberts, Caldwell & Planer, P.A., by Joseph B. Roberts III, for claimant appellant.*

　　*Poyner, Geraghty, Hartsfield and Townsend, by Marvin D. Musselwhite, Jr., and Cecil W. Harrison, Jr., and Kullman, Lang, Inman and Bee, by Andrew C. Partee, Jr., for appellee Beaunit Corporation.*

　　*Garland D. Crenshaw, Howard G. Doyle, Thomas S. Whitaker and William H. Guy for appellee Employment Security Commission of North Carolina.*

　　MORRIS, Judge.

**[1]**　Claimant makes six assignments of error but only two of them are brought forward and argued in his brief. He treats them together, and we shall do the same. Thus, the sole question before us is whether the Superior Court erred in upholding the Commission's order that claimant was disqualified from receiving unemployment benefits.

　　G.S. 96-14 provides in pertinent part:

　　"Disqualification for benefits.—An individual shall be disqualified for benefits:

. . .

　　(5) For any week with respect to which the Commission finds that his total or partial unemployment is *caused by a labor dispute* in active progress on or after July 1, 1961, at the factory, establishment, or other premises at which he is or was last employed or caused after such date by a labor dispute at another place. . . " . (Emphasis supplied.)

Claimant contends that a lockout by management which results in work stoppage is not a "labor dispute" within the scope of G.S. 96-14(5). We disagree.

　　Since "labor dispute" is not defined in Chapter 96 of the General Statutes, claimant maintains that our interpretation

of G.S. 96-14(5) should be controlled by the general public policy as expressed by our legislature in G.S. 96-2. That section states that Chapter 96 should be interpreted and applied ". . . for the benefit of persons unemployed *through no fault of their own.*" (Emphasis supplied.) Claimant argues that, because he was at all times ready, willing and able to continue working at Beaunit but was prevented from doing so by the lockout, his resulting unemployment was "through no fault of his own" and entitles him to benefits under Chapter 96. However, our Supreme Court has held that the section of Chapter 96 which sets out the specific grounds for disqualification of benefits will prevail over the general policy provisions of G.S. 96-2. *In re Steelman,* 219 N.C. 306, 13 S.E. 2d 544 (1941). Therefore, the policy expression is not controlling, and we must look elsewhere to determine whether a lockout is a "labor dispute" within G.S. 96-14(5).

In *Buchholz v. Cummins,* 6 Ill. 2d 382, 128 N.E. 2d 900 (1955), the Illinois Supreme Court examined the exact question now before us. In holding that a lockout was a labor dispute within the Illinois Unemployment Compensation Act, similar to our own Chapter 96, the Court stated:

> "The general purpose of the Illinois Act, as expressed in section 1, is to relieve involuntary unemployment. However, section 7(d) specifically disqualifies any individual for benefits for any week in which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the establishment at which he is or was last employed. By this provision the Illinois legislature adopted the policy that the State shall not, by payment of unemployment compensation, assist one party to a labor dispute, regardless of fault; and that *the State in cases of industrial strife ought not to take sides and place blame. This provision was designed to maintain the neutrality of the State in labor disputes.*" 6 Ill. 2d at 386, 128 N.E. 2d at 902-03. (Emphasis supplied.)

The Supreme Court of Washington, in *In Re North River Logging Co.,* 15 Wash. 2d 204, 130 P. 2d 64 (1942), has likewise held that a lockout constituted a labor dispute for purposes of disqualification from unemployment benefits. The Court noted that a lockout is the employer's weapon equivalent to the employee's strike, and that

"[t]he essential features of our unemployment compensation act are borrowed from the English acts, the original of which was passed in 1911. . . . The English decisions are uniform in holding that a lockout is a labor dispute in contemplation of the national insurance acts." 15 Wash. 2d at 208-09, 130 P. 2d at 66.

For cases of other jurisdictions also holding a lockout to be a labor dispute for purposes of unemployment compensation, see: *Olusczak v. Industrial Comm.*, 230 So. 2d 31 (Fla. 1970) ; *Baltimore Typographical Union v. Hearst Corp.*, 246 Md. 308, 228 A. 2d 410 (1967) ; *Salenius v. Employment Security Comm.*, 33 Mich. App. 228, 189 N.W. 2d 764 (1971) ; *Adams v. Industrial Comm.*, 490 S.W. 2d 77 (Mo. 1973) ; *Basso v. News Syndicate Co., Inc.*, 90 N.J. Super. 150, 216 A. 2d 597 (1966) ; *Nelson v. Employment Comm.*, 290 S.W. 2d 708 (Tex. Civ. App. 1956).

G.S. 96-14(5) does not define "labor dispute" to include only those work stoppages caused by strikes, or, conversely, by lockouts; it is neutral on its face. "It thus appears that the State seeks to be neutral in the labor dispute as far as practicable, and to grant benefits only in conformity with such neutrality." *In re Steelman, supra,* at p. 310. While the decisions from other jurisdictions are not controlling on this Court, they are extremely persuasive when examined in conjunction with the neutrality of our statute. Further, we note that G.S. 96-14(3) (a) impliedly denotes that a lockout is a labor dispute by making reference to ". . . a strike, lockout, *or other* labor dispute." (Emphasis supplied.) Accordingly, we believe, and so hold, that a "labor dispute" as used in G.S. 96-14(5), includes work stoppage caused by management lockouts.

[2] Moreover, we reject the position, urged by appellant, that the Commission, before denying benefits to victims of a lockout, should determine whether the employees were out of work due to some involuntary conduct on their part. "As a general rule, in the absence of a statutory provision requiring a conclusion to the contrary, the fault or responsibility behind a work stoppage or loss of employment is immaterial in determining whether a claimant is disqualified under a statute denying benefits to a person whose unemployment is caused by a labor dispute. . . ." 81 C.J.S., Social Security & Public Welfare, § 185, p. 279. *See also, Buchholz v. Cummins, supra; Adams v. Industrial Comm., supra; Nelson v. Employment Comm., supra.*

We believe that the position taken by the Commission and the Superior Court implements the intention of the General Assembly that the Commission avoid inquiry into the cause or fault of a labor dispute. Clearly, this is the more practical result as well. The Commission should not be compelled to expend its time and resources in order to determine which party is to blame for a work stoppage. The judgment is

Affirmed.

Judges CLARK and ARNOLD concur.