IN THE MATTER OF: FRANK SCARINGELLI, CLAIMANT AND UNIVERSITY
OF NORTH CAROLINA, CHAPEL HILL, EMPLOYER AND EMPLOYMENT
SECURITY COMMISSION OF NORTH CAROLINA

No. 7810SC247

(Filed 6 February 1979)

**Master and Servant § 108—  unemployment compensation—abandonment of
research assistantship—no abandonment of "work"**

Appellee's termination of his studies at the University of North Carolina
and subsequently his research assistantship did not constitute a voluntary
abandonment of "work" within the meaning of G.S. 96-14(1) so that appellee
was disqualified for unemployment benefits.

APPEAL from *McLelland,* Judge. Judgment entered 3
January 1978 in Superior Court, WAKE County. Heard in the
Court of Appeals 10 January 1979.

Claimant last worked on 10 September 1976 for the Univer-
sity of North Carolina at Chapel Hill as a teaching assistant on a
fellowship granted by the University to students. Claimant's
teaching was not part of the curricular requirement for him. The
teaching required about twelve hours' work per week, and he was
paid $100.00 per month.

Claimant quit his studies at the University, thereby ter-
minating his work as a teaching assistant. He felt that driving
daily to Chapel Hill from Cary to study and teach was too great a
burden. Mr. Scaringelli's claim for unemployment benefits was
denied by John Swiggett, Claims Deputy. Mr. Swiggett stated:
" '. . . I have determined that you voluntarily quit your last job
but without good cause attributable to the employer, therefore,
you will be disqualified five weeks from September 19, 1976,
through October 23, 1976, because of separation from U.N.C., Sec-
tion 96-14(1) of the Law applies.' "

Mr. Scarengelli appealed. Ultimately, the Employment
Security Commission affirmed Mr. Swiggett's decision. On 9
September 1977, claimant appealed to the Superior Court, Wake
County. On 3 January 1978, Judge McLelland heard evidence and
entered the following order:

"IT NOW, THEREFORE, IS ORDERED, ADJUDGED AND
DECREED that the decision of the Employment Security Com-

mission under Docket No. 5478 be and the same is reversed and the appellant, Frank Scaringelli, shall not be disqualified pursuant to G.S. 96-14(1) and is eligible to receive unemployment insurance benefits for the period beginning September 19, 1976 and continuing through October 16, 1976.

Done at Raleigh, North Carolina, this the 3rd day of January, 1978.

s/ D. M. McLELLAND
Judge Presiding"

The Employment Security Commission appealed.

*Chief Counsel Howard G. Doyle, Garland D. Crenshaw, and Thomas S. Whitaker, by V. Henry Gransee, Jr., for appellant, Employment Security Commission of North Carolina.*

*Frank P. Scaringelli, pro se.*

ERWIN, Judge.

Appellant presents only one question for our determination:

"Did the Superior Court err in finding as a matter of law that the appellant's work as a teaching assistant was not 'employment' pursuant to G.S. 96-8 (6)g.15., and therefore G.S. 96-14(1) is not applicable and no disqualification thereunder shall be imposed?"

We agree with appellee that his employment did not constitute "work" within the meaning of the statute. We find no error in the order entered by the Superior Court.

Our Legislature's purpose in enacting the Employment Security Act is set forth in G.S. 96-2:

"§ 96-2. *Declaration of State public policy.* — As a guide to the interpretation and application of this Chapter, the public policy of this State is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this State. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon

the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment.to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this State require the enactment of this measure, under the police powers of the State, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own."

Our Legislature sought to provide aid to those out of "work" through no fault of their own. *In re Watson*, 273 N.C. 629, 161 S.E. 2d 1 (1968). Nowhere in the act is the word, "work," defined. Appellant concedes that appellee's services at the University were not employment. It argues that "work" should be given its natural and ordinary meaning and that appellee's claim is consequently disqualified under G.S. 96-14(1). G.S. 96-14(1), at the time the claim was filed, provided:

"§ 96-14. *Disqualification for benefits.* — An individual shall be disqualified for benefits:

(1) For not less than four, nor more than 12 consecutive weeks of unemployment, which occur within a benefit year, beginning with the first day of the first week after the disqualifying act occurs with respect to which week an individual files a claim for benefits if it is determined by the Commission that such individual is, at the time such claim is filed, unemployed because he left *work* voluntarily without good cause attributable to the employer, and the maximum benefits due said individual during his then current benefit year shall be reduced by an amount determined by multiplying the number of such consecutive weeks of unemployment by the weekly benefit amount." (Emphasis added.)

The recent amendment by the Legislature has no bearing on this case. G.S. 96-14(1)'s specific ground for disqualification of

benefits when applicable prevails over the general policy provisions of G.S. 96-2. *See In re Usery*, 31 N.C. App. 703, 230 S.E. 2d 585 (1976), *dis. rev. denied*, 292 N.C. 265, 233 S.E. 2d 396 (1977). Sections imposing disqualifications for unemployment benefits should be strictly construed in favor of the claimant and should not be enlarged by implication. *In re Watson, supra.* Where, as here, the context requires a different construction, a word may be construed so as to effectuate legislative intent. *In re Watson, supra.*

In Webster's Third New International Dictionary (unabridged, 1976), "work" is defined as "the labor, task, or duty that affords one his accustomed means of livelihood." This is the type of "work" to which G.S. 96-14(1) applies. Appellee's services are not covered therein. His services are not "employment" within the meaning of the act, *see* G.S. 96-8(6)k.13 [originally enacted as G.S. 96-8(6)g.15], nor do they constitute work within the meaning of G.S. 96-14(1). It is common knowledge that many of our universities' graduate students receive financial aid. Oftentimes, they are required to work as research assistants to qualify for aid. Upon completion or termination of their studies, these students are ineligible for such aid. The aid is not a permanent method of earning a livelihood, but only a temporary job taken on and performed along with normal school work and subordinate thereto. *See In re Augustine*, 9 A.D. 2d 837, 192 N.Y.S. 2d 801 (1959). If an applicant successfully completes his studies, he is again eligible for unemployment benefits and is to be treated like any other applicant. *Wyka v. Colt's Patent Fire Arms Mfg. Co.*, 129 Conn. 71, 26 A. 2d 465 (1942).

We hold that appellee's termination of his studies and subsequently his research assistantship did not constitute a voluntary abandonment of "work" within the meaning of G.S. 96-14(1).

Affirmed.

Judges MARTIN (Robert M.) and MITCHELL concur.