### Francis RADVANOVSKY

v.

### MAINE DEPARTMENT OF MANPOWER AFFAIRS EMPLOYMENT SECURITY COMMISSION.

Supreme Judicial Court of Maine.

Argued June 5, 1980.

Decided April 6, 1981.

Michael Asen (orally), Portland, for plaintiff.

Patricia M. McDonough, Asst. Atty. Gen. (orally), Augusta, for defendant.

Before McKUSICK, C. J., WERNICK, GLASSMAN and ROBERTS, JJ., and DUFRESNE, A. R. J.

ROBERTS, Justice.

The Maine Employment Security Commission denied Francis Radvanovsky's application for unemployment benefits on the grounds that he had not earned sufficient remuneration to requalify for benefits pursuant to 26 M.R.S.A. § 1192(5). On appeal, the Superior Court held the Commission erred in refusing to consider as remuneration general assistance payments from the City of South Portland received by Radvanovsky after the City had imposed a work requirement as a condition of continued eligibility for assistance. Upon appeal to the Law Court, the Commission contends that such municipal general assistance payments cannot be considered for purposes of requalification, just as they are not used to reduce weekly unemployment benefits of eligible recipients. Since we agree with the Commission, we reverse the decision of the Superior Court.

The Commission's findings of fact are not disputed. Following his last employment in March 1976, Radvanovsky received the initial maximum unemployment benefits for which he qualified. Upon Radvanovsky's request for determination of insured status dated December 1, 1976, the Commission required him to earn $512 after November 30, 1975, in order to requalify for benefits. His earnings through March 1976 totaled $435.64. In December of 1976, he began receiving general assistance from the City of South Portland. After April 6, 1977, the City required Radvanovsky to work 10 hours per week in the South Portland Public Library in order to maintain his entitlement to general assistance. When he reapplied for unemployment benefits in May, 1977, Radvanovsky had earned general assistance payments of at least $180.00. This amount together with his prior earnings would exceed $512. Thus, we are presented with a question of law which we must review under 26 M.R.S.A. § 1194(9).[1] *Moore v. Maine Dept. of Manpower Affairs*, Me., 388 A.2d 516, 518 (1978).

26 M.R.S.A. § 1192(5) (Supp.1980) states in pertinent part:

provided no individual may receive benefits in a benefit year, unless, subsequent to the beginning of the next preceding benefit year during which he received benefits, he performed services, whether or not in employment as defined in section 1043, subsection 11, and earned remuneration for such service in an amount equal to not less than 8 times his weekly benefit amount in the benefit year being established.

In determining whether Radvanovsky "earned remuneration" for service performed, we find no aid in either the legislative definitions provided in 26 M.R.S.A. § 1043, or in the above exclusion of the § 1043 definition of employment. The legislature has neither expressly required nor

---

1. Subsequent to the commencement of this action, section 1194(9) was repealed (effective July 1, 1978) and judicial review was made subject to Title 5, section 11001 *et seq.*

prohibited the use of municipal general assistance payments for purposes of requalification. Indeed, when work requirements were expressly approved under municipal general assistance programs,[2] the Commission was given no direction whatsoever concerning the impact of such requirements upon the Employment Security Law. We must search for more general principles.

The Employment Security Law provides for "the systematic accumulation of funds during periods of employment from which benefits may be paid for periods of unemployment." 26 M.R.S.A. § 1042. Municipal General Assistance Programs provide for "the immediate aid of persons who are unable to provide the basic necessities essential to maintain themselves or their families." 22 M.R.S.A. § 4450. We find nothing in the spirit or purpose of either program that suggests a legislative intent that the one, general assistance, should provide a basis to reestablish eligibility for the other, unemployment benefits. We do not infer such an irrational intent on the part of the legislature.

In the instant case, Radvanovsky earned for his services not remuneration but rather continued eligibility for receiving general assistance from the City under 22 M.R.S.A., chapter 1251. As a condition to receiving general assistance, persons otherwise eligible for such assistance who were capable of working must perform services for the City. The extent of Radvanovsky's general assistance eligibility was first determined; calculation of his working hours was based on that determination at the rate of $3.00 per hour. When he required additional assistance, his eligibility for such assistance had to be first established before he was permitted to work additional hours. Had Radvanovsky become disabled, general assistance would have continued at the same rate. His services could not displace those of regular municipal employees. He cannot be said to have reentered the labor force in any meaningful sense.

In 1977 the legislature revised the municipal general assistance legislation, specifically authorizing municipalities to adopt work requirements "as a condition to receiving general assistance," and transitionally approving preexisting work requirements. 22 M.R.S.A. § 4504; P.L.1977, c. 417, §§ 12, 16. Radvanovsky points to the legislature's failure to also exclude such general assistance payments from the definition of "wages" in 26 M.R.S.A. § 1043(19)(B) as evidence that the legislature intended such payments to be "wages," at least for purposes of requalifying for unemployment benefits. This argument is unpersuasive. Such an exclusion was unnecessary because the recipients of general assistance are not receiving remuneration for services. The work requirement has neither changed the nature of the payments, nor made them subject to any other incidents of wages.[3]

Since we hold that Radvanovsky received no remuneration for services performed for the City, the payments made by the City of South Portland may not be considered under Section 1192(5) for the purpose of reestablishing eligibility for unemployment benefits. The decision of the Superior Court must be reversed, and that of the Commission affirmed.

The entry is:

Judgment of the Superior Court reversed.

Remanded to the Superior Court for the entry of judgment affirming the decision of the Maine Employment Security Commission.

McKUSICK, C. J., and WERNICK and GLASSMAN, JJ., concurring.

DUFRESNE, A. R. J., dissenting in separate opinion.

DUFRESNE, Active Retired Justice, dissenting.

Recognizing that the spirit of the law must be made to control over the literal

---

**2.** *See* 22 M.R.S.A. § 4504 as amended by P.L. 1977, c. 417, §§ 12, 16 (effective October 1977).

**3.** The petitioner's equal protection argument therefore must fail. For the reasons discussed in text, it is rational to distinguish persons earning remuneration for services performed from persons earning continued eligibility to receive general assistance for services performed.

purport of dictionary definitions when necessary to implement the obvious purposes of legislation and that some flexibility is essential in the proper interpretation of statutes (*Opinion of the Justices*, Me., 255 A.2d 643 (1969)), nonetheless in the instant case, with due respect to the views of the majority, I must articulate my dissent to the complete disregard of time-tested and revered canons and rules of interpretation usually applied to reach true legislative intent. It is only by judicial fiat reflecting the personal views of the members of this Court that it can be said, that it would be irrational on the part of the Legislature to combine earned remuneration for services performed in a workfare program with wages received in other employment for the purpose of meeting eligibility requirements in requalifying for unemployment benefits. There is no better way to learn the value of the dollar than to earn it and to appreciate welfare assistance benefits than by working for them. It would seem that, if our Legislators had intended to characterize services performed under workfare programs as quid-pro-quo charity, they would have clearly said so. It appears otherwise.

The single issue presented by this appeal is, whether the remuneration in the form of direct rental payments earned by the claimant for services performed for the City of South Portland in its public library pursuant to a "workfare" program instituted by the municipality and required of welfare recipients in order to qualify for public assistance must be taken into consideration in determining eligibility to receive unemployment benefits within the scope of 26 M.R.S.A., § 1192, and especially of subsection 5, which provides in pertinent part:

"provided no individual may receive benefits in a benefit year, unless, subsequent to the beginning of the next preceding benefit year during which he received

benefits, *he performed services, whether or not in employment as defined in section 1043, subsection 11, and earned remuneration for such service in an amount* equal to not less than 8 times his weekly benefit amount in the benefit year being established." (Emphasis supplied)

The claimant asserts error of law in the Commission's ruling that his existing disqualification remained in effect until such time as he had returned to work in "bona fide" employment and had earned in such employment the required amount of $512.00, while disregarding remuneration earned by the claimant for services performed for the City of South Portland in its public assistance or relief program. The Commission contends that services performed for municipalities under public assistance welfare programs do not constitute employment within the meaning of the Employment Security Law. In this, I believe the Commission was in error, and the Superior Court's decision reversing the same should be affirmed.

The facts are not in dispute. The claimant had received unemployment benefits for the maximum period to which he was entitled as of August 14, 1976. He was still unemployed, when in December of that year he began receiving general assistance from the City of South Portland. In March of 1977, by council resolution,[1] the City of South Portland ordered, as a condition of receiving general assistance, that an otherwise eligible person capable of working be required to perform work for the municipality. The claimant, a college graduate with three years of experience as library assistant, was given work at the South Portland Public Library. He was earning three dollars per hour and worked ten hours per week. The City paid the claimant's weekly remuneration for his library work directly towards his rental obligation. By the time

---

1. 22 M.R.S.A., § 4504, establishing eligibility standards for municipal "workfare" programs, became effective October 24, 1977, i. e. subsequent to the claimant's instant claim for unemployment benefits, but it contained a transitional provision legalizing existing municipal rules or regulations governing the same:

"Any rule or regulation adopted by municipal officers pursuant to Title 22, section 4504, prior to the effective date of this Act shall remain in effect until superseded by ordinances adopted pursuant to this Act."

he re-applied for unemployment benefits in May, 1977, Radvanovsky, so the parties agree, had earned the total amount of $430.00 in the "workfare" program. This amount, if legally available as earned remuneration for services performed within the meaning of the proviso in 26 M.R.S.A., § 1192(5), would, in combination with his previous earnings in insured work at Fairchild Semi-Conductor, Inc. in the sum of $435.64, exceed the five hundred and twelve ($512.00) dollars necessary to re-qualify for unemployment benefits, the latter amount being 8 times his weekly benefit amount in the benefit year being established which section 1192(5) requires.

Neither the research of able counsel nor my own has disclosed any case in any jurisdiction squarely deciding the issue which must be addressed respecting the proper application of 26 M.R.S.A., § 1192(5) to the facts of this case. Since the facts are undisputed, the question is one of law. *DuBois v. Maine Employment Security Commission*, 150 Me. 494, 114 A.2d 359 (1955). The jurisdiction of this Court, as well as that of the Superior Court, in the area of unemployment compensation is confined to reviewing questions of law. *Moore v. Maine Dept. of Manpower Affairs, etc.*, Me., 388 A.2d 516 (1978); 26 M.R.S.A., § 1194(9).

Our present task is one of statutory construction. Section 1192 of title 26 establishes eligibility conditions under which unemployed persons may apply for and receive unemployment benefits made available in section 1191 of the Employment Security Law.

The Legislature has expressly stated in section 1042 of the Act the several purposes underlying its general and specific policy respecting the unemployment problem. In its policy statement, it initially finds that

"[e]conomic insecurity due to unemployment is a serious menace to the health, morals and welfare of the people of this State. Unemployment is therefore a subject of general interest and concern which requires appropriate action by the Legislature to prevent its spread and to lighten its burden which may fall upon the unemployed worker, his family and the entire community. The achievement of social security requires protection against this greatest hazard of our economic life."

Then, the Legislature specifically provides the panacea which it believes will relieve its working force from the effect of the State's unemployment problem whenever it arises:

"This objective [of providing protection against this greatest hazard of our economic life] can be furthered by operating free public employment offices in affiliation with a nation-wide system of public employment services; by devising appropriate methods for reducing the volume of unemployment; and by the systematic accumulation of funds during periods of employment from which benefits may be paid for periods of unemployment, *thus maintaining purchasing power, promoting the use of the highest skills of unemployed workers and limiting the serious social consequences of unemployment.*" (Emphasis added)

In consideration of these broad legislative purposes with special emphasis on the payment of benefits to the unemployed as a means of alleviating the serious consequences of unemployment, our Court, as in the case of the Workers' Compensation Act, has looked upon the Employment Security Law, also referred to as the unemployment compensation statute, as remedial legislation mandating the application of the rule of liberal construction wherever ambiguity in its terms may arise. *Toothaker v. Maine Employment Security Commission*, Me., 217 A.2d 203, 210 (1966); *Maine Unemployment Compensation Commission v. Androscoggin Junior, Inc.*, 137 Me. 154, 160, 16 A.2d 252, 255–256 (1940). See also *Smith v. Department of Employment Security*, 407 A.2d 158 (Vt.1979).

In *Cornwall Industries, Inc. v. Maine Department of Manpower Affairs, E. S. Com.*, Me., 351 A.2d 546 (1976), this Court recognized that, in the application of the liberal construction rule, the secondary purpose of the Act, i. e. the stabilization of economic conditions generally, must not be given pri-

ority over its primary objective which is the alleviation, through the payment of unemployment benefits, of the economic hardship which the unemployed worker would otherwise suffer in the absence of such benefits. Broad concepts of welfare assistance must not be made to control or restrict the primary purpose of the Employment Security Law, unless clearly dictated by legislative terminology.

Furthermore, sections of the Act imposing disqualifications for unemployment benefits should be strictly construed in favor of the claimant; this is consistent with the overall obligation to construe the Act liberally in favor of eligibility. See *Department of Industrial Relations v. Nix*, Ala.Civ.App., 381 So.2d 651, 653 (1980); *Matter of Scaringelli*, 39 N.C.App. 648, 251 S.E.2d 728 (1979); *Seyfried v. Department of Employment Security*, 392 A.2d 401 (Vt.1978); *Sain v. Labor and Industrial Relations Com'n*, 564 S.W.2d 59, 61 (Mo.App.1978).

No person should be excluded from unemployment compensation benefits, unless the Act itself reveals a clear intention on the part of the Legislature to make such an exclusion. *Jenkins v. Department of Employment Security*, 373 A.2d 533, 534 (Vt. 1977); *Dinges v. Unemployment Comp. Bd. of Review*, 28 Pa.Cmwlth. 306, 369 A.2d 898 (1977).

In interpreting legislative intent underlying the statute, we must first look at the language used. Section 1192(5) of title 26 provides in pertinent part as follows:

§ 1192. *Eligibility conditions*

An unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that:

5. *Has earned wages.* He has been paid during his base period wages of at least $600 for insured work ...; provided no individual may receive benefits in a benefit year, unless, subsequent to the beginning of the next preceding benefit year during which he received benefits, he performed services, whether or not in employment as defined in section 1043, subsection 11, and earned remuneration for such service in an amount equal to not less than 8 times his weekly benefit amount in the benefit year being established.

It might appear at first blush that section 1192(5) presents an internal ambiguity in the fact that basic eligibility to receive benefits is made to depend upon a commission finding that the unemployed worker has been paid during his base period *wages* of at least $600 *for insured work.* The proviso for re-qualification, on the other hand, uses different terminology: it does not speak in terms of wages for insured work; rather, it talks about services performed for which remuneration was earned; furthermore, it expressly states that it is immaterial, whether the services for which remuneration was earned were performed in employment as defined in section 1043, subsection 11 or not.

Statutes must be construed to carry out legislative intent. *Oxford County Agricultural Society v. School Administrative District No. 17*, Me., 220 A.2d 485, 489 (1966). Legislative intent, if ascertainable, must prevail and be given effect. *Finks v. Maine State Highway Commission*, Me., 328 A.2d 791, 797 (1974); *King Resources Co. v. Environmental Improvement Commission*, Me., 270 A.2d 863, 869 (1970).

Our Legislature, in enacting the Employment Security Law, in order to make clear the exact coverage which it intended, conjoined in section 1043 definitions of practically every significant term used in the Act. This evinces a definite indication that the choice of words was deliberate and that the detailed applications of the Act were not to be left to surmise or implication. As far as language will permit, the Act demonstrates a studied effort to be precise in all particulars. See *Unemployment Comp. Com'n v. Jefferson S. L. Ins. Co.*, 215 N.C. 479, 2 S.E.2d 584 (1939).

"Wages" is defined (section 1043(19)) as

"*all remuneration for personal services,* including commissions, bonuses, gratuities and the cash value of all remuneration in any medium other than cash. The rea-

sonable cash value of remuneration in any medium other than cash shall be estimated and determined in accordance with regulations prescribed by the commission." (Emphasis provided)

The fact that the City of South Portland remunerated the claimant for his personal services by means of direct payments of rental obligation to the landlord clearly did not remove the claimant's "workfare" earnings from the meaning of wages contemplated by the Act. This broad definition of the term "wages" makes it obvious that it is not essential that the remuneration move directly from the employer to the employee to be "wages" within the scope of the Act.

"Insured work" means employment by employers (section 1043(15)). We need not elaborate respecting the definition of "employer" (section 1043(9)), as the parties do not question this phase of the problem except for the fact that the employment of the claimant was pursuant to the city's "workfare" program.

Furthermore, section 1043(19)(B) specifically excludes from the term "wages," for purposes of section 1192(5), retirement benefits, sickness or accident disability benefits, and medical and hospitalization expense payments under plans or systems established by employers; also, employer payment of the employee's tax obligation under the Federal Insurance Contributions Act without deduction from the employee's earnings; also, any payment other than vacation or sick pay to employees 65 years of age, if no services were performed for the employer in the period for which such payment is made. We note that, when it revised the municipal general assistance legislation and specifically adopted the "workfare" concept in 1977 with its transitional sanction of such pre-existing municipal programs (22 M.R.S.A., § 4504), the Legislature did not amend section 1043(19)(B) to add a further exclusion from the term "wages" for the purpose of section 1192(5) so as to indicate that workfare remuneration should not be so considered. Nor did it do so in section 4504 of title 22. Legislative silence on that score is patent evidence of continued intendment that remuneration earned for services performed in municipal workfare programs are to be considered wages at least for the purposes of section 1192(5) in determining eligibility in re-qualifying for unemployment benefits thereunder. The time-honored precept of "expressio unius est exclusio alterius" should find ready application in the construction of legislation, where the Legislature has manifested a deliberate attempt to be specific to the minute detail. See *Grenafege v. Department of Employment Security*, 357 A.2d 118 (Vt.1976).

The Commission's exclusion of workfare earnings in determining re-qualification for unemployment benefits is contrary, however, to the express mandate of the Legislature and should not be countenanced by the courts. Section 1192(5) of title 26, after establishing as a basic eligibility condition for unemployment benefits the payment during the base period of wages for insured work in the minimum amount of $600.00, then expressly states by way of proviso:

"provided no individual may receive benefits in a benefit year, unless, subsequent to the beginning of the next preceding benefit year during which he received benefits, he performed services, whether or not in employment as defined in section 1043, subsection 11, and earned remuneration for such service in an amount equal to not less than 8 times his weekly benefit amount in the benefit year being established."

This statutory language affirmatively mandates that, in determining whether the claimant's earnings for services amount to not less than 8 times his weekly benefit amount in the benefit year being established, the source of remuneration for the services rendered need not be employment as defined in section 1043, subsection 11, the latter subsection enumerating what services come within the Act and what services are excluded. Such precise statutory language cannot be treated as surplusage on the pretext of conflict between the State's general assistance relief program and the State's specific unemployment abatement plan. To

the contrary, I view this precision terminology as indicating legislative intendment to not restrict eligibility on re-qualifying for unemployment benefits to wages earned and paid for insured work, but to broaden eligibility at that point so as to include, as the proviso declares, earned remuneration for services performed, whether such earnings and services might not be wages or employment as defined in section 1043. There is no inconsistency in such a reading of the legislative will; rather, the ensuing result serves the respective purposes of both relief programs.

As stated in *Finks v. Maine State Highway Commission*, Me., 328 A.2d 791, 799 (1974):

> "In the construction of a statute, nothing should be treated as surplusage, if a reasonable interpretation supplying meaning and force is possible."

To the same effect: *National Newark & Essex Bank v. Hart*, Me., 309 A.2d 512, 520 (1973); *Carter v. Division of Water*, 146 Ohio St. 203, 65 N.E.2d 63 (1946). Statutes must be interpreted as written. *Guy Gannett Publishing Co. v. Maine Employment Security Commission*, Me., 317 A.2d 183, 187 (1974); *Stewart v. Maine Employment Security Commission*, 152 Me. 114, 125 A.2d 83 (1956).

I am aware that the office of a proviso in a statute is ordinarily to limit and qualify the preceding language of the clause upon which it is engrafted, and not to enlarge it. It may be used to exclude some possible ground of misinterpretation of its breadth. See *Johnson v. School District of Wakefield*, 181 Neb. 372, 148 N.W.2d 592 (1967). While this is the appropriate and presumed office of a proviso, it may be clearly designed to perform some other function. And, when the legislative will so mandates, a proviso will be construed as a conjunctive clause enlarging the scope of the preceding matter to which it is appended, the term "provided" being used for the conjunctions "and" or "but." See *Interstate Commerce Commission v. Baird*, 194 U.S. 25, 36–37, 24 S.Ct. 563, 565–566, 48 L.Ed. 860 (1904); *State v. Mooneyham*, 212 Mo.App. 573, 253 S.W. 1098, 1100 (1923); *State v. Summers*, 118 Neb. 189, 223 N.W. 957 (1929); *State v. Bruce*, 104 Mont. 500, 69 P.2d 97, 104 (1937); *Little v. Stevens*, 267 N.C. 328, 148 S.E.2d 201, 206–207 (1966).

As I view the proviso, it definitely shows a clear intention on the part of the Legislature to expand the source of earned remuneration for personal services, only insofar as eligibility for re-qualification for benefits is concerned, beyond remuneration paid for insured work required in the unemployed's initial attachment to the labor market. Whether or not workfare would otherwise be excluded as employment by section 1043, subsection 11 of title 26, we need not decide, since the Legislature in the express language of the proviso has stated that it makes no difference whether the remuneration for personal services was earned in employment as defined in the reference subsection of section 1043. Such manifest legislative purpose must be honored by the judiciary.

When in 1977 it empowered municipalities to establish, as eligibility standards to receiving general assistance by persons capable of working, the requirement that such persons perform work for the municipality, transitionally legalizing existing workfare programs already in place under previously promulgated rules and regulations, the Legislature, had it wished to do so, could have simultaneously amended section 1192(5) of the Employment Security Law to exclude workfare payments from consideration in computing the required earned remuneration for re-qualification for unemployment benefits. Such omission is evidence that the Legislature itself views workfare earnings as earned remuneration for performance of services within the meaning of 26 M.R.S.A., § 1192(5). If we were to adopt the appellant's argument, we would, in effect, be amending the statutes, a power properly reserved for legislative consideration. See *Page v. General Electric Co.*, Me., 391 A.2d 303 (1978).

I cannot say that my interpretation of the Employment Security Law in the circumstances of this case is contrary to the

underlying purposes of such legislation, but rather, that it meets with the clear intent of the Legislature. I would affirm the Superior Court judgment.