1998 ME 93

Marvin COKER

v.

CITY OF LEWISTON.

Supreme Judicial Court of Maine.

Argued Dec. 1, 1997.

Decided April 30, 1998.

Patricia M. Ender (orally), Pine Tree Legal Assistance, Inc., Augusta, for plaintiff.

Robert S. Hark (orally), City Attorney, Lewiston, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLY, JJ.

SAUFLEY, Justice.

█ [¶ 1] This case requires us to decide whether a recipient of general assistance who has performed "workfare" to maintain eligibility for that assistance is entitled to offset the value of that workfare against the recipient's obligation to reimburse the municipality for the general assistance received. Because we conclude that the recipient is entitled to such an offset, we vacate the judgment of the Superior Court (Androscoggin County, *Atwood, J.*) affirming the hearing officer's decision to the contrary.

[¶ 2] The facts are undisputed. The City of Lewiston provided Marvin Coker with general assistance and required him to perform work through its municipal work program intermittently between October 1993 and August 1995.[1] In total, the City provided Coker with $1,651.85 in general assistance and Coker performed 285 hours of workfare valued at $1,211.25 if compensable at the then-existing minimum wage of $4.25 per hour. *See* 22 M.R.S.A. § 4316–A(2)(A) (Supp.1997).

[¶ 3] During an intervening period of private employment, Coker injured his back, applied for workers' compensation, and was

---

1. Although the statute never uses the phrase, both parties refer to the work performed pursuant to a municipal work program as "workfare." We have adopted the use of the term for purposes of this appeal.

awarded $1,267.68. At the City's request, pursuant to 22 M.R.S.A. § 4318 (1992 & Supp.1997), Coker authorized a lien on his workers' compensation award to reimburse the City for the general assistance it had provided him. The City then enforced the lien and, because that amount was less than the $1,651.85 of general assistance provided to Coker, kept the entire $1,267.68 award.

[¶ 4] Coker appealed to the City's fair hearing authority, citing 22 M.R.S.A. § 4316-A(2)(A) and arguing that the value of his workfare operated as an offset against the general assistance he received. Accordingly, Coker asserted that the City owed him $827.08.[2] The hearing officer concluded that it did not have jurisdiction to hear the appeal pursuant to 22 M.R.S.A. § 4322 (Supp.1997). On appeal to the Superior Court, the court (Alexander, J.) ruled that the hearing officer did have jurisdiction and remanded the matter for disposition on the merits. The hearing officer then concluded that 22 M.R.S.A. § 4318 permitted the City to keep all of Coker's workers' compensation award without regard for the value of his workfare. Coker once again appealed to the Superior Court (Atwood, J.), which affirmed the hearing officer's decision.

[¶ 5] The City challenges the court's determination that the hearing officer had authority to address Coker's appeal. Coker, in turn, challenges the court's judgment affirming the hearing officer's conclusion that the City may retain all of his workers' compensation award as a recovery of the general assistance it provided to him. Coker argues that the value of work performed by a general assistance recipient pursuant to 22 M.R.S.A. § 4316-A(2)(A) must be offset against the general assistance received, thus limiting the municipality's recovery pursuant to 22 M.R.S.A. § 4318. The City, relying on Rad-

vanovsky v. Maine Dept. of Manpower Affairs, 427 A.2d 961 (Me.1981) and Closson v. Town of Southwest Harbor, 512 A.2d 1028 (Me.1986), contends that the work performed has no value other than to establish the recipient's continuing eligibility to receive general assistance.

[¶ 6] When the Superior Court reviews a municipal decision pursuant to 5 M.R.S.A. §§ 11001–11007 (1989), we review the decision of the municipality directly. See H.E. Sargent, Inc. v. Town of Wells, 676 A.2d 920, 923 (Me.1996); 5 M.R.S.A. § 11008 (1989). The hearing officer here was called upon to construe the Municipal General Assistance statutes, specifically 22 M.R.S.A. §§ 4316-A and 4318. The meaning and construction of statutory language presents a question of law. See Community Telecomm. Corp. v. State Tax Assessor, 684 A.2d 424, 426 (Me. 1996). We review such questions de novo. See H.E. Sargent Inc., 676 A.2d at 923.

[¶ 7] Maine's general assistance statutes must be construed liberally to effect their remedial purposes and achieve their humanitarian aims. See Beaulieu v. City of Lewiston, 440 A.2d 334, 344 (Me.1982).[3] We look first to the plain meaning of the statutory language as a means of effecting the legislative intent. See Daniels v. Tew Mac Aero Servs., Inc., 675 A.2d 984, 987 (Me.1996). Where the statutory language is ambiguous, we examine other indicia of legislative intent, such as legislative history. See Jordan v. Sears, Roebuck & Co., 651 A.2d 358, 360 (Me.1994). The statutory scheme from which the language arises must be interpreted to achieve a harmonious outcome. See id. We will not construe statutory language to effect absurd, illogical, or inconsistent results. See Fullerton v. Knox County Comm'rs, 672 A.2d 592, 594 (Me.1996).

---

2. That amount is calculated as follows: $1,651.85 (total dollars of general assistance) less $1,211.25 (value of workfare performed) equals $440.60 (remainder owed to the City); $1,267.68 (lump sum workers' compensation award) less $440.60 equals $827.08.

3. In Beaulieu, we concluded that Maine's general assistance statutes were to be construed liberally after considering, in particular, the third sentence of 22 M.R.S.A. § 4450(2) (1977), repealed

by P.L.1983, ch. 577, § 2 (effective Sept. 23, 1983). See Beaulieu, 440 A.2d at 344. The exact language of that sentence now exists as the third sentence of 22 M.R.S.A. § 4301(5) (1992), which was enacted to replace section 4450(2) as part of a recodification of the general assistance statutes. See P.L.1983, ch. 577, § 1 (effective Sept. 23, 1983). The purposes of the general assistance program remain unchanged by the recodification.

## I. Authority of the Hearing Officer

[¶ 8] We first address the authority of the hearing officer to entertain Coker's appeal. The right to a fair hearing arises from 22 M.R.S.A. § 4322 (Supp.1997), which provides that "[a]ny person aggrieved by a decision, act, failure to act or delay in action concerning his application for general assistance under this chapter shall have the right to an appeal [to the fair hearing authority]." The City urges a narrow construction of this language, contending that an appeal is authorized only for decisions directly relating to the original application for general assistance.

[¶ 9] Section 4322, however, as one of Maine's general assistance statutes, is entitled to liberal construction. *See Beaulieu,* 440 A.2d at 344. Its language anticipates a variety of different decisions from which an applicant will be entitled to an appeal. In recognition of this variety, section 4322 provides an appeal period of five working days when the applicant has received "written notice of denial, reduction, or termination of assistance," but provides a longer appeal period, ten working days, from "any other act or failure to act by the municipality with regard to an application for assistance." Moreover, guidelines established by the Department of Human Services provide that "all decisions regarding General Assistance are subject to the fair hearing process." Me. Dep't. of Hum. Serv. Gen. Assistance Guidelines § 8 (June 1995) [hereinafter Guidelines]; *cf. Bar Harbor Banking & Trust v. Superintendent of Bureau of Consumer Protection,* 471 A.2d 292, 296 (Me.1984) ("The construction of a statute by an agency charged with enforcing it is entitled to great deference."). We conclude that the City's retention of Coker's workers' compensation award constituted an act by the City regarding Coker's application for general assistance. Accordingly, the court did not err in ruling that the hearing officer had authority to entertain Coker's appeal.

## II. Workfare

[¶ 10] We turn now to the hearing officer's conclusion that the value of Coker's workfare cannot be set off against the general assistance he received from the City.[4] Section 4316–A(2) permits a municipality to require unemployed persons to work for the municipality or a participating nonprofit organization as a condition of receiving general assistance,[5] and provides in pertinent part that:

[a] person may not, as a condition of general assistance eligibility, be required to do any amount of work that exceeds the value of the *net general assistance* that the person would otherwise receive under municipal general assistance standards. Any person performing work under this subsection must be provided with net general assistance, the value of which is computed at a rate of at least the State's minimum wage.

22 M.R.S.A. § 4316–A(2)(A) (Supp.1997) (emphasis added).

[¶ 11] Although this section anticipates that a recipient of general assistance will not be required to perform workfare beyond the amount of "net general assistance" received, it does not explicitly provide that the value of the recipient's workfare operates as a credit against the obligation to reimburse the municipality for the general assistance received.[6] Because the plain language of section 4316–A(2)(A) does not unambiguously disclose the Legislature's intent, we look to the legislative history of the statute for guidance. *See Jordan,* 651 A.2d at 360. During the House debate of the 1977 legislative revisions to the general assistance statutes, which, *inter alia,* authorized municipalities to adopt workfare programs in connection with

---

4. The State's General Assistance Guidelines do not address this issue. *See* Guidelines § 10.

5. "A person may not be required to work under this subsection if that person is physically or mentally incapable of performing the work assigned." 22 M.R.S.A. § 4316–A(2)(G) (Supp. 1997).

6. *Compare* 22 M.R.S.A. § 4316–A(2)(A) *with* N.H.Rev.Stat.Ann. § 165:31(I) (Supp.1997) ("The amount an assisted person may be required to reimburse the town or city for aid received shall be reduced by the credits received from participation in the municipal work program.").

general assistance, Representative Wilfong characterized the purpose of the workfare as follows:

> It will require that people who come to the city or town asking for general assistance may have to work for all or a portion of the assistance that they receive, that they will be paid the minimum wage and that if you come for $100, for an example, because you need $100 to pay an oil bill or whatever and you are in good health, ... that you may be asked to do some work in that town to pay for a portion of the $100 or maybe the whole of the $100. I think this is a positive step toward our solving our welfare problem. I think that this is the step that really gives some dignity to the people who are coming and asking for general assistance.

2 Legis.Rec. 1551 (1977). Representative Berube further elaborated on the workfare requirement:

> Section 12 of L.D. 1868, the Majority Report, has a work requirement. Some people sincerely want to work for the money that they are requesting. It is temporary assistance, generally that they request. They certainly don't want a handout. Most people don't. This would give them an opportunity to work for the assistance they were receiving, work for a city or a town project.

*Id.* These statements evidence the Legislature's intention that the value of workfare serve not only as a benchmark against which to determine the amount of work that may be required of a recipient but also as an offset against the recipient's reimbursement obligation.

[¶ 12] This legislative intent is borne out by a construction of section 4316–A(2)(A) that avoids illogical or inconsistent results. The language of section 4316–A(2)(A) pre-

vents a municipality from requiring a recipient to perform workfare in excess of the "net general assistance" provided. It does so by providing the municipality with a comparative measure of workfare's value with respect to general assistance benefits. If this comparative measure is not recognized for the purpose of offsetting the work's value against the general assistance received, the recipient may be required to reimburse the municipality twice, once through his labors and again in dollars, contrary to the intent expressed in the legislative record.

[¶ 13] Moreover, the use of the term "*net general assistance*" evidences a legislative recognition that the total general assistance provided to a recipient may be reduced by the City's receipt of credits or offset against the total amount for the purpose of determining the amount of workfare that can be required of a recipient. For instance, had Coker's workers' compensation benefits been received while he was still receiving general assistance, those benefits would have been directed to the City. The City's receipt of the workers' compensation benefits would have contemporaneously reduced the amount of "net general assistance" received by Coker, thereby reducing the total hours of workfare that the City could have required him to perform.[7] The fact that Coker was awarded workers' compensation benefits *after* receiving general assistance and performing workfare should have no effect on the amount that he owes the City for the net general assistance he received.[8]

[¶ 14] The City also argues that this interpretation of section 4316–A(2)(A) conflicts with the workers' compensation lien authority found at 22 M.R.S.A. § 4318 (1992 & Supp.1997). Section 4318 provides in pertinent part that:

> Notwithstanding any other provision of law, municipalities have a lien for the value

---

7. We recognize that this hypothetical is unlikely to occur in the sequence presented. Had Coker been receiving workers' compensation benefits prior to his re-application for continuing general assistance, those benefits would have been considered as income by the City in calculating Coker's need for general assistance, *see* 22 M.R.S.A. § 4301(7) (Supp.1997), thereby reducing the amount of general assistance for which he would have been eligible.

8. A simple calculation demonstrates the principle. Because the City provided Coker with $1,651.85 in general assistance and kept his entire $1,267.88 workers' compensation award, the "net general assistance" Coker received equals $440.60. Nonetheless, he was required to perform workfare valued at $1,211.25.

of all general assistance payments made to a recipient on any lump sum payment made to that recipient under the former Workers' Compensation Act, the Maine Workers' Compensation Act of 1992 or similar law of any other state.

*Id.* It is the City's position that, even if section 4316–A is read to allow an offset, section 4318, by its introductory phrase, "[n]otwithstanding any other provision of law," precludes the application of an offset to reduce the amount of the lien. The City misreads section 4318. Section 4318 does not speak to the *amount* due to the City. Rather, it provides a method by which the amount due, once determined, may be collected. The intent of the section is to allow access to workers' compensation benefits without regard to other provisions of law limiting that access.[9] Because section 4316–A(2)(A) recognizes the value of workfare as an offset against general assistance received, section 4318 authorizes a lien for the remainder due the City notwithstanding any provision that would prevent enforcement of such a lien.

[¶ 15] Finally, the City argues that our decisions in *Radvanovsky v. Maine Dept. of Manpower Affairs*, 427 A.2d 961 (Me.1981) and *Closson v. Town of Southwest Harbor*, 512 A.2d 1028 (Me.1986) compel a contrary result. The analyses of both *Radvanovsky* and *Closson*, however, required us to determine the relationship between the general assistance program and other employment-related programs, specifically unemployment compensation[10] and workers' compensation.[11] Here, we need look no further than the provisions of the general assistance statutes themselves. Coker does not assert an employment relationship or seek a benefit incident to employment. Rather, he seeks relief based upon an interpretation of the general assistance statutes alone.

[¶ 16] Workfare is a unique creation of statute. The Legislature's decision to assign it a value that will be offset against a recipient's reimbursement obligation is not inconsistent with its intention not to create an employment or contractual relationship between the recipient and the municipality. *See Closson*, 512 A.2d at 1030. The unique nature of the relationship between the recipient and the municipality is made clear in section 4316–A. For example, recipients may be required to perform their workfare for a nonprofit organization rather than the municipality while receiving assistance directly from the municipality, *see* 22 M.R.S.A. § 4316–A(2)(A) a recipient performing workfare "may not replace regular municipal employees or regular employees of a participating nonprofit organization[,]" 22 M.R.S.A. § 4316–A(2)(C); and benefits will be paid to eligible applicants even when they are unable to perform workfare, *see* 22 M.R.S.A. § 4316–A(2)(G).

[¶ 17] The Legislature intended workfare to benefit both the recipient, by "really giv[ing] some dignity to the people who are coming and asking for general assistance,"[12] and the community, by making available to the community services that would not otherwise be available. Although it constitutes neither employment nor direct consideration for the benefits provided, workfare has a value that must be taken into

---

9. For example, see 39–A M.R.S.A. § 106 (Supp. 1997), which provides that:

> No agreement by an employee, unless approved by the board or by the Commissioner of Labor, to waive the employee's rights to compensation under this Act is valid. No claims for compensation under this Act are assignable or subject to attachment or liable in any way for debt, except for the enforcement of a current support obligation or support arrears pursuant to Title 19–A, chapter 65, subchapter II, article 3 or Title 19–A, chapter 65, subchapter III, or for reimbursement of general assistance pursuant to Title 22, section 4318.

10. Radvanovsky sought to combine the value of his workfare with the wages he received in other employment for the purpose of requalifying for unemployment benefits pursuant to 26 M.R.S.A. § 1192(5) (Supp.1997). *See Radvanovsky*, 427 A.2d at 962.

11. Closson, alleging that she was injured while performing workfare pursuant to 22 M.R.S.A. § 4504(5)(A), sought the status of an "employee" for purposes of the workers' compensation statutes, 39 M.R.S.A. § 2(5)(A) (Supp.1985), *repealed and replaced by* P.L.1991, ch. 885, § A–7, A–8, *codified at* 39–A M.R.S.A. § 102(11) (Supp.1997). *See Closson*, 512 A.2d at 1028.

12. *2 Legis.Rec. 1551* (1977) (statement of Representative Wilfong).

account in determining both the amount of work that may be required of the recipient and the amount of reimbursement to which the municipality may be entitled.

[¶ 18] We hold, therefore, pursuant to section 4316–A(2)(A), that the value of a general assistance recipient's workfare must be offset against the recipient's obligation to reimburse the municipality for the net general assistance received.

The entry is:

Judgment of the Superior Court affirming the decision of the hearing officer vacated. Remanded for further proceedings consistent with this decision.

