STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  Docket No. AP-15-22


517 OCEAN HOUSE LLC,

                Plaintiff          STATE OF MAINE
                                   Cumberland. ss. Clerk's Office

v.                                 MAY 1 1 2016          ORDER

                                   RECEIVED
TOWN OF CAPE ELIZABETH, et al,

                Defendants


Before the court is a Rule 80B appeal by 517 Ocean House LLC from a May 19, 2015

decision of the Cape Elizabeth Planning Board approving a site plan application by parties in

interest 541 Ocean House Road LLC, Nick Tammaro, Jennifer Feeney, and Sheldon Goldman

(collectively, 541 Ocean House).

541 Ocean House sought site plan approval for a pizza restaurant, retail space, and a

landscaping business on Ocean House Road in Cape Elizabeth near the intersection of Ocean

House Road and Two Lights Road. Plaintiff 517 Ocean House LLC is the owner and operator of

a restaurant (Rudy's on the Cape) located a short distance north on Ocean House Road. For the

sake of clarity, plaintiff 517 Ocean House will be referred to as Rudy's in this order.

Standard of Review

Review of a municipal decision under Rule 80B is for the purpose of determining

whether there was an abuse of discretion, an error of law, or findings not supported by

substantial evidence. *E.g., Camp v. Town of Shapleigh*, 2008 ME 53 ¶ 9, 943 A.2d 595.[1]

---

[1] In contrast, where an appeal from a municipal decision turns on the meaning of statutes, regulations, or municipal ordinances, the interpretation by municipal officials is subject to *de novo* judicial review. *Coker v. City of Lewiston*, 1998 ME 93 ¶ 6, 710 A.2d 909; *Isis Development LLC v. Town of Wells*, 2003 ME 149 ¶ 3 n.4, 836 A.2d 1285.

Substantial evidence is evidence that a reasonable mind would accept as sufficient to form a conclusion even if the evidence would also support a contrary conclusion. *Sproul v. Town of Boothbay Harbor*, 2000 ME 30 ¶ 8, 746 A.2d 368.

This case largely turns on the issue of whether the Planning Board made sufficient findings to conclude that site plan approval should be granted. The Law Court has ruled on a number of occasions that municipal planning boards are required to make the necessary findings and that meaningful judicial review is not possible without findings of fact sufficient to apprise the court of the basis of a planning board decision. *E.g., Comeau v. Town of Kittery*, 2007 ME 76 ¶ 12, 926 A.2d 129; *Chapel Road Associates v. Town of Wells,* 2001 ME 178 ¶ 10, 787 A.2d 137. The Law Court has also stated as recently as 2012, however, that in an appropriate case a court may conclude that, if there is sufficient evidence in the record, a planning board's decision may be deemed to be supported by "implicit findings." *Town of Minot v. Starbird,* 2012 ME 25 ¶11 n. 4, 39 A.3d 897; *York v. Town of Ogunquit,* 2001 ME 53 ¶ 14, 769 A.2d 172.

In this case the Cape Elizabeth Planning Board made a general finding that subject to certain express conditions, the site plan application submitted by 542 Ocean House substantially complied with the site plan provisions in the Cape Elizabeth Zoning Ordinance. See R. Tab 12 Finding 3. It did not, however, make findings with respect to each of the individual approval standards in the Ordinance.

In some cases the Law Court has remanded for express findings with respect to specific standards set forth in the zoning ordinance. *See Sawyer v. Town of Cape Elizabeth,* 2004 ME 71 ¶ 25, 852 A.2d 58. In other cases the Law Court has concluded that a remand is not necessary where a general finding has been made and the subsidiary findings are obvious or easily inferred from the record. *Wells v. Portland Yacht Club,* 2001 ME 20 ¶¶ 10-11, 771 A.2d 371. In the absence of express findings, whether a case should be remanded for further findings depends on

2

whether the determinations made by the Planning Board and the basis for those determinations are sufficiently clear so that there can be meaningful judicial review. *See Chapel Road Associates v. Town of Wells,* 2001 ME 178 ¶ 12.

Discussion

The site at issue in this case contains four buildings and three greenhouses. Tammaro Landscaping currently uses three of the buildings and the greenhouses. At the time of the application the front building (closest to Ocean House Road) contained three retail businesses, and 541 Ocean House proposes to replace one of the retail uses in the front building with a 30 seat restaurant, leaving the other two retail uses essentially unchanged. R. Tab 1 at 1-2. 541 Ocean House also proposes to modify the existing parking by removing approximately 7000 sq. ft. of pavement and creating a patio and landscaped area in front of the restaurant. R. Tab. 1 at 1.

Tammaro Landscaping will continue to use the remaining three buildings on the site but two of the greenhouses will be removed. The 541 Ocean House application does not propose the expansion of any of the existing buildings. R. Tab 1 at 2.

Motivated by what Rudy's perceives as a major difference in the treatment that 541 Ocean House received compared to the treatment that Rudy's received when it applied for site plan approval in 2012-14,[2] Rudy's takes issue with the approval of the 541 Ocean House application in 11 respects.

The challenges made by Rudy's involve certain of the submission requirements for site plan applications in section 19-9-4(C) of the Cape Elizabeth Zoning Ordinance, certain of the standards for the approval of site plan applications in section 19-9-5 of the ordinance, and certain of the design requirements in section 19-6-5 of the ordinance.

---

[2] *See* Rule 80B Brief of Appellant 517 Ocean House LLC dated November 19, 2015 at 32-35.

3

1.    Right, Title and Interest

Rudy's argues that 541 Ocean House failed to meet the submission requirement that the applicant must show evidence of right, title, and interest in the site of the proposed project. Ordinance § 19-9-4(C)(1). However, 541 Ocean House submitted a copy of its deed to the property. R. Tab 1 at 11-13. Moreover, although a portion of the property (the area in the front building where 541 Ocean House proposed to place a restaurant) was subject to a lease to the retail store "Something's Fishy" at the time the application was filed, the undisputed evidence in the record demonstrates that the lease was to expire in March 2016. R.Tab. 16 at 5.

Rudy's challenge on this issue is without merit.


2.    Financial Capability

Rudy's argues that 541 Ocean House failed to meet the submission requirement of showing financial capability. Ordinance § 19-9-4(C)(16). The record showed that Nick Tammaro is the sole owner of 541 Ocean House Road LLC, R. Tab. 11 at 2. The record also contains a letter from the Town Manager stating that he had reviewed the finances of Mr. Tammaro and had determined that he had the financial capability to undertake the project. R. Tab 7. Finally, the ordinance expressly contemplates that the Town Manager will make a recommendation to the Planning Board on the issue of financial capability. Ordinance § 19-9-4(C)(16).

Rudy's challenge on this issue is without merit.


3.    Water Supply

One of the standards for approval of a site plan application is a finding that there is an adequate supply of drinking water. Ordinance § 19-9-5(F). Specifically, this standard requires that if the project is served by a public water supply, the applicant submit a letter from the supplier that "the proposed water supply system conforms with its design and construction

4

standards, will not result in an undue burden on the source or distribution system, and will be installed in a manner adequate to provide needed domestic and fire protection flows."

Rudy's argues that 541 Ocean House failed to meet this standard because the original letter submitted referred to a take out restaurant rather than to the eat-in restaurant actually proposed and did not evaluate the water needs of the other uses proposed in the site plan application. However, the Planning Board did not make a finding that 541 Ocean House had met this standard. Recognizing that the requisite letter was missing, the Board expressly made its approval subject to the condition that "the applicant provide a letter from the Portland Water District confirming that adequate water will be available for all proposed uses on the site and that any necessary upgrade to water lines be installed." R. Tab. 12 at 2 (Condition 3).

Rudy's contends that it appears this letter was to be submitted to the Town Planner and that this constitutes an improper delegation of the Board's authority. Under the Cape Elizabeth Ordinance, the Planning Board has authority to "conditionally approve" a site plan application. Ordinance § 19-9-3. In the case of the water supply standard, the Planning Board did not delegate any discretion or decision-making authority to the Town Planner. The ordinance expressly makes the public water supplier (here the Portland Water District) the sole decision-maker as to the adequacy of the water supply and distribution system. The Planning Board's conditional approval only requires the Town Planner to perform the ministerial function of confirming that the necessary letter from the Portland Water District has been submitted.

Rudy's challenge on this issue is without merit.


4. Lighting

In its application 541 Ocean House requested a waiver of site plan approval standard with respect to lighting, Ordinance § 19-9-5(M), stating that it believed the existing lighting scheme is adequate and that no new lighting is proposed. R. Tab. 1 at 3. Accordingly, it did not submit the lighting information that would ordinarily have been a submission requirement. *See* Ordinance § 19-9-4(C)(14).

The Cape Elizabeth Ordinance gives the Planning Board discretion to waive a site plan submission requirement if it finds that "due to special circumstances of a particular plan, [such submission] is not required in the interest of public health, safety, and general welfare or is inappropriate because of the nature of the proposed development." Ordinance § 19-9-4(C)(17). Rudy's points out that the Planning Board never made such a finding with respect to the submission of lighting information.

Counsel for the Town points out that there was a colloquy about lighting at the Planning Board hearing, and the Planning Board minutes state, "As for the lighting, no new lighting is being proposed so no photometric study will be required". R.Tab. 11 at 3. Rudy's was represented at the hearing, and given the statement in the minutes the court concludes that the Planning Board made the requisite finding that a more detailed lighting submission was not necessary.

Just because the existing lighting will not be changed, however, does not necessarily mean that the existing lighting is in compliance with § 19-9-5(M) (requiring, inter alia, exterior lighting adequate for safety without excessive illumination, shielding of light fixtures, and not more than 0.5 footcandles of illumination at the lot line or upon abutting properties). The record as submitted by 541 Ocean House is sufficient to demonstrate that the Board found that there would be no illumination on adjacent properties. *See* R. Tab 16 at 13.[3] However, there is no finding on whether the other requirements of § 19-9-5(M) are met.[4]

---

[3] On various issues, the transcript submitted by Rudy's summarizes the discussion rather than purporting to be complete. Specifically on the issue of lighting, the summary states, "Discussion re height of lighting; is one story building; maybe 10 feet; there's nothing shining on the neighbors; satisfied; agree with Maureen [Town Planner Maureen O'Meara]." R. Tab 16 at 13 (emphasis added).

[4] Noting that the transcript of the Planning Board meeting submitted by Rudy's in R. Tab 16 omits the full lighting colloquy, counsel for the Town provides a link to a website where that colloquy supposedly can be found. Town of Cape Elizabeth's Rule 80B Brief, dated January 9, 2016 at 14 n.3. Either because of the court's lack of internet expertise or because the link did not work as advertised, the court was unable to access the website. To the extent that the Town is requesting to supplement the record, supplementation of the record must be made in writing rather than by referring the court to a website.

On this issue, therefore, the case will be remanded to the Planning Board for a finding on whether the lighting is adequate for safety without excessive illumination and whether the light fixtures are shielded.

5.   Screening

One of the design requirements in the zoning ordinance provides that a landscaped area shall be provided in the front year set back between the road and the parking lot and "shall include plantings of a size sufficient to obscure the view of parked cars and parking lots from the sidewalk and transitioning to a lesser height." Ordinance § 19-6-5(E)(g)(2). Rudy's argues that there is no finding or showing that this standard has been met.

541 Ocean House submitted a landscape plan that shows the addition of street trees between the road and the parking area. R. Tab. 16 (Landscape Plan), showing 1.5" caliper red maples. In addition, the Planning Board expressly conditioned approval on the requirement that the proposed maple trees be a minimum of 2" to 2.5" in caliper at the time of planting. R. Tab. 12 at 2 (Condition 5). If this were the only issue, the court might be inclined to conclude that the Planning Board made an implicit finding that the planting of 2" to 2.5" caliper trees would meet the requirement of Ordinance § 19-6-5(E)(g)(2). However, since a remand is already being ordered, the Board upon remand shall make a finding, based on the existing record or on any other information that is necessary to make that determination, whether the plantings between the road and the parking area will obscure the view of parked cars and parking areas.

6.   Buffering

The site plan approval standards and performance standards in the Cape Elizabeth ordinance require buffering between non-residential uses and residential uses. Thus, Ordinance § 19-8-1(2) provides that side and rear yards of nonresidential uses abutting residential districts shall be maintained in natural vegetative state as much as possible, and imposes specific requirements where natural buffering "is not sufficient to maintain an effective visual screen".

The third paragraph of Ordinance §19-9-5(N) provides that required parking spaces shall be effectively screened from view by a visual barrier no less than 6 feet high of shrubs, trees, fences, or a combination thereof along exterior lot lines adjoining residential properties. Ordinance §19-9-5(N) expressly states that the latter requirement can be waived "when it is determined that such buffering is not necessary or desirable."

In this case the record reflects that there are residential uses to the west (Chapman) and north (Golden Ridge Subdivision) of the 541 Ocean House site. Rudy's argues that the landscaping plan submitted by 541 Ocean House does not show the required visual screen and that the Planning Board did not make a finding under §19-9-5(N) that buffering was not necessary or desirable.

The landscape plan submitted by 541 Ocean House showed a number of trees and some 6 ft. stockade fencing in places along the Chapman boundary. R. Tab 18 (Landscape Plan). On this issue the record also reflects discussion by the Planning Board that the Board had previously required the Golden Ridge subdivision to include buffering along the lot line adjoining the 541 Ocean House property and that it was excessive to require 541 Ocean House to "buffer the [existing] buffer." R. Tab 16 at 14. There were evergreens along the Chapman boundary shown on the Landscape Plan as "existing white pine trees (planted per previously approved site plan)". R. Tab 18 (Landscape Plan). One member of the Board noted the evergreens along the Chapman boundary and the board chair noted that, based on the site walk, the whole back area is densely wooded. R. Tab 16 at 14-15. Notably, one of the Board members, declaring herself satisfied with the buffering between the 541 Ocean House and Chapman properties, asked whether any other Board members wanted more buffering. R. Tab 16 at 14. No one responded.

The court concludes that the record reflects that the Board has made the necessary implicit findings that existing natural buffering and/or the buffering already in place is sufficient and that further buffering would not be necessary or desirable.

7.    Sidewalk Paving

Relying on a sketch in the Cape Elizabeth Design Requirements, R. Tab 15 at 112, Ordinance § 19-6-5(E)(g), sketch at page 112, Rudy's argues that 541 Ocean House's site plan application is deficient because it proposed a stone dust sidewalk rather than an asphalt or concrete sidewalk. The problem with this argument is that the sketch is expressly listed as an example. There is no requirement that sidewalks be asphalt or concrete. In addition, on the sketch itself the entry walkway is listed as asphalt or concrete but the sidewalk is shown with a series of dots along the surface, indicating that other surfaces can be used. 541 Ocean House's Landscape Plan (part of R. Tab 18) also shows a series of dots on the surface.

Rudy's challenge on this issue is without merit.


8.    Stormwater

In its site plan application 541 Ocean House requested a waiver of the obligation to submit a pre and post development stormwater study. R. Tab 1 at 4. Accompanying that request was an analysis noting that the result of the proposed development was a decrease in impervious surface area caused by the reduction in the area that was previously paved and corresponding reduction in stormwater runoff. R. Tab 1 at 40.

Rudy's complains that the Planning Board never expressly granted the waiver that was requested. However, the file contains a letter from the Town Engineer agreeing that because there would be a reduction in the impervious surface and because relatively minor alterations were proposed for the stormwater system, the Town Engineer supported a waiver and encouraged the Board to grant it. R. Tab 5 ¶ 3. Given the Town Engineer's letter, the court concludes that on this issue the record reflects an implicit finding by the Planning Board pursuant to Ordinance § 19-9-4(C)(17) that a stormwater study was not necessary.

The Town Engineer's letter also endorsed 541 Ocean House's proposal to replace an existing drainage ditch with a catch basin system but recommended that the catch basins have the 24 inch grates that are standard in Cape Elizabeth and also recommended that in one location an

area drain be used to connect to the Route 77 drainage to avoid impacting the stone dust sidewalk. R. Tab 5 ¶ 4. The Planning Board conditioned its approval on revision of the site plan as described in paragraph 4 of the Town Engineer's letter. R. Tab 11 Condition 1.

Rudy's argues that this constituted an improper delegation by the Planning Board to the Town Engineer. Once again, however, the Planning Board was not delegating its decision-making authority to the Town Engineer. It exercised its decision-making authority to approve the application with the condition that the plan be revised as stated in the Town Engineer's letter.

This does not fully resolve the stormwater issue, however, because there is no finding in the record that the existing stormwater system on the site, with the modifications proposed by 541 Ocean House in its application and the revision of the plan as described in paragraph 4 of the Town Engineer's letter, will meet the approval standard set forth in Ordinance § 19-9-5(D). Accordingly, on remand, the Planning Board shall consider this issue and make any necessary findings.

### 9. Siding

Rudy's argues that 541 Ocean House's site plan fails to meet the design requirement that exterior materials shall be compatible with nearby buildings, primarily because the standard provides that metal siding "shall be discouraged." Ordinance § 19-6-5(E)(f). 541 Ocean House is not proposing the change the existing siding, which matches the material and color of the siding of Tammaro's Greenhouse. R. Tab. 1 at 4, 15, 20-22. Although metal siding is "discouraged," it is not forbidden. In fact, one Board member noted that she had argued against metal siding during the site plan review for Rudy's on the Cape, but the rest of the Board had disagreed and found metal siding to be compatible. She added, "At least yours is going to be painted." R. Tab 16 at 15.

Rudy's challenge on this issue is without merit.

10

10.     Procedural Due Process

Rudy's argues that the Planning Board violated its own procedures and due process by holding a hearing on whether the 541 Ocean House application was complete and then, having made that finding, by proceeding immediately to a hearing on the merits of the application. The pertinent provision of the Cape Elizabeth Ordinance is § 19-9-4(B)(2), which provides that upon certification by the Planning Board that an application is complete,

> the Planning Board, in its discretion, may hold a public hearing. If the Planning Board determines to hold a public hearing, it shall hold the hearing within thirty-five (35) days of the date that the application is deemed complete and shall provide public notice in accordance with [the applicable provisions of the Ordinance].

In this case the Planning Board specifically gave public notice that on May 19, 2015 it would hold a completeness review on 541 Ocean House's application and, if the application was found to be complete, would then hold a public hearing on the same date.

> The Town of Cape Elizabeth Planning Board will begin to review and, if the application is deemed complete, hold a public hearing on TUESDAY, May 19, 2015 . . . to hear public comment on the following item:
>
> Nick Tammaro and Jennifer Feeney are requesting Site Plan Review of a mixed use site including a 30-seat restaurant, retail space, and landscaping business located at 541 Ocean House Rd, (U18-8) Site Plan Completeness and Public Hearing.

R. Tab 3 (Public Hearing Notice) (emphasis added). *See also* R. Tab 4 (legal advertisement of "Site Plan Completeness and Public Hearing"); R. Tab 8 (Planning Board agenda listing "Site Plan Completeness and Public Hearing").

Nothing § 19-9-4(B)(2) precludes the Planning Board from holding a public hearing – if it exercises its discretion to do so – on the same date that it finds a site plan application to be complete so long as it gives the required notice of the public hearing, which it did in this case. Counsel for Rudy's was aware of the public hearing, submitted a comment letter that was discussed by the Planning Board, attended the public hearing, and participated during the public

11

comment period. Rudy's had adequate notice that if the 541 Ocean House application was deemed complete, the public hearing would be held immediately thereafter. The Planning Board did not violate the procedural requirements of Ordinance § 19-9-4(B)(2) in this case.

Moreover, although Rudy's now contends that new information was provided at the May 19 hearing that it did not have time to review, the record does not reflect that Rudy's or its counsel ever objected to the Board's determination that the 541 Ocean House application was complete or to the Board's decision to proceed directly to public hearing upon finding the application to be complete.[5] The Law Court has consistently ruled that objections that have not been raised before a municipal board or administrative agency are not preserved for appeal. *E.g.,* *Tarason v. Town of South Berwick*, 2005 ME 30 ¶ 8, 868 A.2d 230; *New England Whitewater Center Inc. v. Department of Inland Fisheries and Wildlife*, 550 A.2d 56, 58 (Me. 1988). This is true even with respect to constitutional claims. *New England Whitewater Center*, 550 A.2d at 58. Since Rudy's did not raise its procedural objections below, it has not preserved that issue for appeal.[6]

Finally, even if Rudy's procedural due process claim had been preserved, the short answer is that Rudy's has not demonstrated that it had any liberty or property interest at stake. Under the circumstances, Rudy's received all that due process requires – notice and an opportunity to be heard as provided by the ordinance.

11.    Equal Protection

At the heart of Rudy's objections in this case is its contention that it was subjected to very stringent site plan review in 2012 -14 and that the Planning Board violated equal protection by not subjecting the 541 Ocean House application to equally stringent review. Rudy's raised the

---

[5] If anything, the transcript suggests that counsel for Rudy's declined to comment on the completeness issue and saved her comments for the merits of the application. *See* R. Tab 16 at 5-6.

[6] Rudy's complaint includes a separate cause of action for a declaratory judgment on its constitutional claims but Rudy's failed to file a motion to specify the future course of proceedings pursuant to Rule 80B(i). Whether or not that failure would be fatal to Rudy's claim for declaratory relief need not be reached in view of Rudy's failure to preserve its due process objection below.

12

issue of equal treatment before the Board and on appeal sought to assert an equal protection claim by contending that the record on its site plan application should also be made part of the record in this case. The court declined that request for the reasons stated in its order dated October 22, 2015.

Rudy's continues to pursue that argument in its Rule 80B brief. A party asserting a violation of equal protection must allege that, compared with others similarly situated, it was treated differently "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure." *Marshall v. Town of Dexter*, 2015 ME 135 ¶ 30, 125 A.3d 1141, quoting *Tapalian v. Tusino*, 377 F.3d 1, 5 (1st Cir. 2004). Rudy's does not contend that it was subjected to differential treatment because if any impermissible consideration such as race or religion or the exercise of constitutional rights. Rudy's does, however, contend that was subjected to overly stringent review because the Planning Board, for unspecified reasons, acted vindictively and maliciously in its case. *See* Rule 80B Brief of Appellant 517 Ocean House LLC dated November 19, 2015 at 34, asserting that the record on Rudy's site plan application would demonstrate that Planning Board members engaged in opposition research outside the record in order to obstruct its application, that Board members "used ad hominem hostile language against both [Rudy's] and its counsel," that the Board chair "made a site visit, without notice, and nearly ran down [Rudy's] owner with her car in making a fast departure," that the Board imposed various submission requirements that went beyond the scope of its review standards, and that Rudy's application was subjected to an extended process in a hostile environment.

It is possible that Rudy's application presented more issues than the application in this case, which proposed only to replace an existing retail use with a restaurant, retain two other retail uses and a landscaping business, and modify parking facilities and landscaping, without expanding any of the existing buildings. It is also possible that the Rudy's project raised many of the same issues as the application in this case and that, motivated by ill will or some other

reason, the Planning Board essentially put Rudy's through the wringer but raised none of the same obstacles with respect to the 541 Ocean House application.

Assuming that Rudy's is correct and the latter scenario is applicable, Rudy's nevertheless cannot assert an equal protection claim in this action. This is true because the relief available to a party who is being denied equal protection is an end to the illegal treatment <u>directed at the party subjected to the discrimination</u>. Assuming its allegations are correct, Rudy's should perhaps have brought suit to prevent the Board from maliciously subjecting its application to unwarranted and hostile treatment. However, Rudy's is not entitled to require the Cape Elizabeth Planning Board to subject all other similarly situated parties to the same allegedly unjustified and illegal treatment that Rudy's claims it was subjected to.

In sum, Rudy's is entitled to require the Planning Board to follow the rules in evaluating a potential competitor's site plan. It is not entitled to require the Planning Board to impose a level of scrutiny that goes beyond the rules.

The entry shall be:

1. For the reasons stated above, the case is remanded to the Cape Elizabeth Planning Board for further findings as to (1) whether the lighting is adequate for safety without excessive illumination and whether the light fixtures are shielded; (2) whether the plantings between the road and the parking area will obscure the view of parked cars and parking areas and (3) whether the existing stormwater management system, with the modifications proposed by 541 Ocean House Road LLC and revision of the plan in conformity with paragraph 4 of the Town Engineer's letter, meets the approval standard in Ordinance § 19-9-5(D).

2. In all other respects the May 19, 2015 decision of the Cape Elizabeth Planning Board is affirmed.

3. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

14

Dated: May 10, 2016

_____
Thomas D. Warren
Justice, Superior Court

15